(65 App. Div. 508.)

.  COX v. ISLAND MIN. CO.  SAME v. TODD.  SAME v. PAUL.

(Supreme Court, Appellate Division, Second Department.  November 22, 1901.)

1. FOREIGN CORPORATIONS — OFFICE — ACTION FOR PENALTY—APPEAL—ESTOPPEL.

Stock Corporation Law, § 53, as amended by Laws 1897, c. 384, provides that every foreign stock corporation having an office for the transaction of business in the state shall keep a stock book, and that such book shall be open daily, during business hours, for the inspection of its stockholders and others enumerated, and "for any refusal" to allow said book to be inspected such corporation and the officer or agent so refusing shall each forfeit the sum of $250, to be recovered by the person to whom such refusal was made.  In an action to recover such penalty, the corporation's secretary testified that, in answer to questions of plaintiff, he told the latter that the corporation had an office at the place alleged in plaintiff's complaint, and that the books were there; that the company had no other office, and that all the business was transacted there,—which testimony was corroborated by defendant's attorney.  *Held* that, though the company had no considerable amount of business to transact, the evidence was sufficient to show that the company had an office in the state for such business, within the provisions of the statute.

2. SAME—STOCK BOOKS—REFUSAL TO SHOW—LIABILITY OF OFFICERS.

Under such statute the officers refusing to exhibit the stock books, as well as the corporation, are subject to the penalty, though no express duty is imposed on the officers to exhibit such books.

3. SAME—TIME OF DEMAND—BUSINESS HOURS.

A demand to be shown the stock book, made at 3:15 o'clock in the afternoon, while the officer on whom the demand was made was still in the office, and at a time when he made the excuse that he was too busy to produce the book, is made during "the usual hours of transacting business," within the contemplation of the statute.

4. SAME—PENALTY—RECOVERY.

Under such statute a stockholder may recover the penalty for every daily denial of his rights.

5. SAME—INTEREST ON PENALTIES.

Under such statute interest will not run on the penalties recovered.

6. APPEAL—JUDGMENT—MODIFICATION.

Under Code Civ. Proc. § 1022, providing that the supreme court may modify, affirm, or grant a judgment warranted by the facts on appeal from a judgment on a referee's decision, where interest is wrongfully awarded on penalties recovered in an action against a foreign corporation under Stock Corporation Law, § 53, on its appearing that the amount involved as interest is of no importance, and its allowance or rejection involves no question going to the merits of the case, the judgment may properly be modified by striking out the award of interest.

Appeal from special term, Westchester county.

Consolidated actions by Theodore Cox against the Island Mining Company, William R. Todd, and William A. O. Paul.  From judgments in favor of plaintiff, defendants appeal.  Modified.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Benjamin Scharps (David Scharps, on the brief), for appellants.
William M. Bennett, for respondent.

WOODWARD, J.  The plaintiff brought three actions to recover the penalties provided by section 53 of the stock corporation law, as amended by chapter 384 of the Laws of 1897, recovering in each

action. The questions presented upon this appeal relate to the construction to be placed upon the statute, which reads as follows:

"Sec. 53. Stock Books of Foreign Corporations.—Every foreign stock corporation having an office for the transaction of business in this state, except moneyed and railroad corporations, shall keep therein a book to be known as a stock book, containing the names, alphabetically arranged, of all persons who are stockholders of the corporation, showing their places of residence, the number of shares of stock held by them respectively, the time when they respectively became the owners thereof, and the amount paid thereon. Such stock book shall be open daily, during business hours, for the inspection of its stockholders and judgment creditors, and any officer of the state authorized by law to investigate the affairs of any such corporation. If any such foreign stock corporation has in this state a transfer agent, whether such agent shall be a corporation or a natural person, such stock book may be deposited in the office of such agent and shall be open to inspection at all times during the usual hours of transacting business, to any stockholder, judgment creditor or officer of the state authorized by law to investigate the affairs of such corporation. For any refusal to allow such book to be inspected, such corporation and the officer or agent so refusing shall each forfeit the sum of two hundred and fifty dollars to be recovered by the person to whom such refusal was made."

The Island Mining Company, one of the defendants, is a Michigan corporation, and the defendant Paul is its secretary, and the defendant Todd its president. There is a dispute as to whether the defendant company has an office for the transaction of business in this state, within the meaning of the statute; but it is not questioned that Paul and Todd have possession of the books, papers, and other property of the corporation at an office at 45 Broadway, in New York City, which office is occupied by the Quincy Mining Company, of which the two said defendants are officers, and where whatever of business the defendant company has to do is transacted. On the morning of April 25, 1900, the plaintiff, a stockholder, demanded of Paul, the secretary, at this office, 45 Broadway, that he be allowed to inspect its stock book. This the defendant Paul refused to do. At a later hour in the day the plaintiff again appeared, bringing a witness with him, and demanded the book, and at this time called the attention of the defendant Paul to the fact that he was incurring a penalty by refusing to comply with the demand. He still refused to permit the plaintiff to see the book. This demand was repeated on the following day, and was again refused. On April 27th the plaintiff again returned to the office, and, finding the president, Todd, there, made a demand upon him, and the defendant Todd refused to allow him to see the stock book. Having made these several demands, and been refused his rights under the statute, the plaintiff sued Paul for three penalties, or $750; Todd for one penalty, or $250; and the company for four penalties, or $1,000. The three cases were tried together before a referee, that against Paul being tried first, followed by that against Todd; the testimony in the case against Paul being adopted by stipulation in the case against Todd. This, with the additional evidence necessary to establish a cause of action against Todd, was afterwards stipulated to be the evidence in the case against the corporation, and the three cases were thus practically merged in one, and were decided and reported upon by the learned referee together, and they will be best understood by

following the same course upon this appeal. The answers in all three actions admit that the Island Mining Company is a foreign stock-corporation, such as is provided for by section 53 of the stock corporation law; that Mr. Paul is the secretary, that Mr. Todd is the president, and that the plaintiff was a stockholder at the times mentioned in the complaint, narrowing the issues to the questions: "Did the Island Mining Company have an office for the transaction of business in this state? Did the defendant officers refuse to permit the plaintiff to see such books upon demand?" The learned referee has rendered a decision in which the facts must be presumed to have been found in favor of the plaintiff, and the exception to the decision, as provided in section 1022 of the Code of Civil Procedure, brings up for review all questions of fact and law.

The principal point urged by the appellants is that the Island Mining Company was not a corporation "having an office for the transaction of business in this state," within the contemplation of the statute, and therefore that there can be no recovery. We are convinced that the evidence is sufficient to support the judgment, and that the Island Mining Company, a foreign corporation, had an office for the transaction of business at 45 Broadway, New York City, at the times mentioned in the complaint. Mr. Paul testifies:

"I think it was that day or the next he [Mr. Cox] asked me if that was the office of the Island Mining Company, and whether the books were there. I told him it was the office of the company, and that the books were there."

This is corroborated by the defendants' attorney, Mr. Scharps; and Mr. Paul further stated that the company has no other office anywhere, and that all of the business that the company did was transacted at 45 Broadway. The question here presented is not whether the Island Mining Company had its capital employed in this state, or was actually doing business, but whether it had an office in this state for the transaction of business. When the officers of that corporation, admitting that it is a foreign corporation, testify that they told the plaintiff that the office at 45 Broadway was the office of the company, and that the books of the company were there, and when they admit that all of the business which the company has to do is transacted at that place, they can hardly be heard on appeal to deny that the company has an office in this state for the transaction of business, even though the company does not have any considerable amount of business to transact. As Lord Kenyon has well said, a man shall not be permitted to "blow hot and cold" with reference to the same transaction, or insist, at different times, on the truth of each of two conflicting allegations according to the promptings of his private interest. Broom, Leg. Max. 140. In People v. Roberts, 154 N. Y. 1, 47 N. E. 974, the question presented related to the taxation of foreign corporations, involved the point of their actually doing business in this state, and the extent to which the capital of the corporation was employed within this state; and these matters went to the question of jurisdiction. Grey, J., in a concurring opinion (page 7, 154 N. Y., and page 976, 47 N. E.) says:

"It is too clear for argument that it is not sufficient that a foreign corporation shall be merely doing business in this state in order to subject it to taxa-

tion, and the condition must exist that its capital stock, or some part of it, is employed within this state."

In that case the court held that the tax could not be sustained, because it was not shown that any part of the capital was employed in this state, though it was conceded that the company was doing business in very much the same manner that the defendant the Island Mining Company is doing business, though on a larger and more active scale. Were it necessary to sustain the judgment in the present case, it might be pointed out that the having an office in this state for the transaction of business is not necessarily a jurisdictional fact. Prior to the amendment of the stock corporation law in 1897, section 56 read as follows:

"The transfer agent in this state of any foreign corporation whether such agent shall be a corporation or a natural person, shall, at all times during the usual hours of transacting business, exhibit to any stockholder of such corporation, when required by him, the transfer book, and a list of the stockholders thereof, if in his power to do so, and for every violation of the provisions of this section, such agent, or any officer or clerk of such agent, shall forfeit the sum of two hundred and fifty dollars, to be recovered by the person to whom such refusal was made."

As all corporations must act through agents, and as the executive officers are properly the agents of the corporation, by placing the transfer book and other books and papers in the custody and control of the president and secretary in an office in the city of New York the corporation would be estopped to deny that such persons were its agents (7 Am. & Eng. Enc. Law, 809); and, if the plaintiff had made his demand upon these individuals prior to the amendment of the law in 1897, it is not to be doubted that he would have been permitted to recover the penalty prescribed by the statute. In the amendment of 1897 this provision of the old law is practically reenacted, and it now provides that:

"If any such foreign stock corporation has in this state a transfer agent, whether such agent shall be a corporation or a natural person, such stock book may be deposited in the office of such agent and shall be open to inspection at all times during the usual hours of transacting business, to any stockholder, judgment creditor or officer of the state authorized by law to investigate the affairs of such corporation. For any refusal to allow such book to be inspected, such corporation and the officer or agent so refusing shall each forfeit the sum of two hundred and fifty dollars to be recovered by the person to whom such refusal was made."

The complaint, in addition to alleging that the corporation has an office at 45 Broadway, alleges that it acts as its own transfer agent; and it seems entirely reasonable that the plaintiff, by merely relying upon the presence of the corporation's transfer agent in this state, might have been entitled to recover, even though there was no office for the transaction of business actually within the control of the corporation. It is not, however, necessary to decide this point, as the evidence fully sustains the proposition that, for the purposes of this litigation at least, the corporation had an office for the transaction of business in this state.

The appellants then urge that there can be no recovery against Paul or Todd, two of the officers of the company, under the statute,

because no duty is imposed upon an officer of a foreign corporation to exhibit the stock book. The statute clearly evidences an intention, not only to impose a penalty upon the corporation itself, but upon the officer or agent who makes the refusal; and it is no part of the duty of the courts to be astute in discovering a way to defeat the intent of the legislature, and especially where the enactment has to do with an important branch of the public policy of the state. Section 29 of the stock corporation law provides for keeping a stock book for domestic corporations, and it provides that:

"If any officer or agent of any such corporation shall neglect or refuse to make any proper entry in such book or books, or shall neglect or refuse to exhibit the same, or allow them to be inspected and extracts taken therefrom as provided in this section, the corporation and such officer or agent shall each forfeit and pay to the party injured a penalty of fifty dollars for every such neglect or refusal, and all damages resulting to him therefrom."

It is clearly the intent of the statute, in so far as it relates to domestic corporations, to charge the corporation and the officer or agent of the corporation who refuses to display the books of the company with the penalty affixed; and it cannot be presumed that the legislature would make more favorable conditions for a foreign corporation than it established for those of its own creation. The fact that the penalty is less in the case of a domestic corporation, and that the party injured is allowed to recover the damages which may result to him, indicates an intention on the part of the legislature, in the case of foreign corporations, to make the penalty in the nature of liquidated damages. It cannot be doubted that the scheme of the law is to protect the stockholder in his right to see the transfer book by imposing a penalty upon the corporation to make it diligent in securing competent and reliable officers and agents, and then, by imposing a penalty upon the officer or agent, to impress the importance of the duty upon the individual who is called upon to act for the corporation. The hardship of the statute can always be avoided by obedience to the law and to the dictates of common honesty in dealing with the property and rights of others, and it is not for the courts to relax the rules of public policy prescribed by the legislature within the scope of its constitutional powers.

The suggestion that there can be no recovery against Mr. Todd because the demand was not made during business hours does not seem to have been made upon the trial, and, if it had been, it is without force. The "usual hours of transacting business" are not confined to the hours of business which any particular individual may establish for himself, but, with the exception of banking houses, they range through the whole day down to the hours of rest in the evening, or at least during the hours which are customarily devoted to business in the particular community where the transaction occurs. 5 Am. & Eng. Enc. Law, 77, 78, and authorities there cited. The demand upon Mr. Todd was made at a quarter past 3 o'clock, while he was still in the office, and at a time when he made the excuse that he was too busy to produce the book.

The appellants urge that the statute does not provide for the cumulative penalties which have been recovered, but in this we are

not able to agree.   The language of the  statute that "for any refusal to allow such book to be inspected such corporation and the officer or agent so refusing shall each forfeit the sum of two hundred and fifty dollars," clearly evidences a design on the part of the legislature to give the plaintiff a remedy for every denial of his rights; at least for every daily denial of such rights.   Johnson says the word "every" means "each one of all," and the same great lexicographer defines "any" to mean "every," and says "it is, in all its senses, applied indifferently to persons or things."   Purdy v. People, 4 Hill, 384, 413. The court in the same case, speaking through Senator Scott, say:

"However, if we apply the rule to this case, and seek to ascertain the meaning of the words by examining the context, it will be found that in every section of the constitution where the words 'every' and 'any' are used it is in the sense defined by Johnson.  The word 'every' occurs fifteen and 'any' twenty-five times in the constitution, and in no instance is either of them used in a limited sense, as meaning 'some'; but, on the contrary, they are invariably employed in the sense of 'all,' or 'each one of all.' "

See, also, People v. Clark, 7 N. Y. 385, 390; 2 Am. & Eng. Enc. Law, 415, 416, and authorities cited in notes.

The use of the word "any" instead of "every" in the clause giving the penalty does not, in our opinion, limit the scope of the statute, and no reason suggests itself why the plaintiff's right should be limited. The statute makes it the duty of the corporation to have the book within reach of the stockholders daily.   The stockholder has a clear right to see the book every day, and it may be important for him to have this privilege.   The denial of this right on one day does not give a right to deny the right on a second or a third day, nor is the plaintiff obliged to bring an action for the former refusals in order that he may be protected in his rights.   The statute appears to us clear and free from ambiguity, and the right of the plaintiff to recover cannot reasonably be questioned.

The statute makes no provision for interest, and we are inclined to the view that there was error in the award of interest.   16 Am. & Eng. Enc. Law, 996, and notes.   The amount involved in interest is of no great importance, and involves no question going to the merits of the case, and we may properly, within the provisions of section 1022 of the Code of Civil Procedure, modify the judgment by striking out the award of interest.

The judgments should be modified in accord with this discussion, and, as so modified, should be affirmed, but without costs.   All concur.