PEOPLE ex rel. MILES v. MONTREAL & B. COPPER CO., Limited, et al.

(Supreme Court, Special Term, New York County. March, 1903.)

1. FOREIGN CORPORATIONS—STOCKBOOK—RIGHT TO EXAMINE—MANDAMUS.

Under Laws 1892, p. 1869, c. 688, § 53, as amended by Laws 1897, p. 314, c. 384, § 3, requiring foreign stock corporations having an office for transaction of business in the state to keep a stockbook open for stockholders' inspection during business hours, a corporation which maintains in the state an office or a stock transfer agent is maintaining an office for the transaction of business in the state, and may be compelled by mandamus to deposit and exhibit its stockbook at such office.

2. SAME—REFUSAL.

Where a stockholder has made repeated demands for an inspection of a stockbook of a foreign corporation, a refusal is sufficiently established where those in charge of the office have for a month met such demands with evasive answers.

Application by the people, on the relation of Robert M. Miles, Jr., for writ of mandamus to the Montreal & Boston Copper Company, Limited, and others. Granted.

Dos Passos Bros. (John R. Dos Passos and Edmund F. Harding, of counsel), for relator.

Hatch, Keener & Clute (William A. Keener, of counsel), for respondents.

LEVENTRITT, J.  This is an application for a peremptory writ of mandamus requiring the respondent Montreal & Boston Copper Company to deposit and keep open for inspection in its office, or the office of the respondents Monroe & Monroe, its transfer agents, its stockbook, in accordance with the provisions of section 53 of the stock corporation law (Laws 1892, p. 1869, c. 688, as amended by Laws 1897, p. 314, c. 384, § 3).  That section provides:

"Every foreign stock corporation having an office for the transaction of business in this state, except moneyed and railroad corporations, shall keep therein a book to be known as a stock-book, containing the names, alphabetically arranged, of all persons who are stockholders of the corporation, showing their places of residence, the number of shares of stock held by them respectively, the time when they respectively became the owners thereof, and the amounts paid thereon. Such stock-book shall be open daily, during business hours, for the inspection of its stockholders and judgment creditors, and any officer of the state authorized by law to investigate the affairs of any such corporation. If any such foreign stock corporation has in this state a transfer agent, whether such agent shall be a corporation or a natural person, such stock-book may be deposited in the office of such agent and shall be open to inspection at all times during the usual hours of transacting business, to any stockholder, judgment creditor or officer of the state authorized by law to investigate the affairs of such corporation. For any refusal to allow such book to be inspected, such corporation and the officer or agent so refusing shall each forfeit the sum of two hundred and fifty dollars to be recovered by the person to whom such refusal was made."

On this application there is no material dispute as to the facts. The respondent Montreal & Boston Copper Company is a foreign corporation engaged in the business of mining. The respondents Monroe are, under their firm name of Monroe & Monroe, the transfer agents of the mining company, with an office at 25 Broad street, in this city. One of the members of the firm is its secretary treasurer. The relator is a stockholder. His certificates of stock read that the shares are transferable only in person or by attorney on the books of the company upon surrender of the certificate. Numerous demands, oral and written, were made by the relator at various times in the course of a month, always during ordinary business hours, for an inspection of the stockbook; describing it in the terms of the statute. One of these demands was made of the president of the company, at a time when he was present in the office of the transfer agent, sitting behind a desk, and who stated that at that time the book was "at the head office, in Montreal." Another was made in writing of George H. Monroe, the member of the firm who is likewise secretary treasurer of the company. Frequent demands were also made of one Curtis, who was at all such times in charge of the office of the transfer agent, and who stated on one occasion that that was not the "main office" of the company. While there was, perhaps, no out and out refusal, in terms to permit the relator to examine the stockbook, he was never accorded that privilege, always being met by evasive statements, generally to the effect that the book sought was not in the office of the transfer agent, but was at the home office, in Montreal.

As to the question of law, I am of the opinion that the mandate of the statute applies to the respondent company. I am prepared

to hold that, though it has merely a transfer agency in this jurisdiction, it is nevertheless, within the meaning and intent of the statute, a foreign corporation having an office for the transaction of business in this state. Any other construction would defeat the remedial purpose of the statute. While, of course, we cannot inject into it a term or condition not inserted, or not properly or reasonably to be inferred from expressed enactment we should, bearing the purpose of the law in mind, avoid all forced and refined construction. Section 53 was designed for the protection of the stockholder. The book showing stock transactions, holdings, and transfers was literally to be an open book to him. Domestic corporations, completely under the control of state authority, are required to keep such a book. Foreign corporations, subject to our control only in so far as they enter our jurisdiction, are under the same requirement to the extent that we can impose it. Obviously, where a foreign corporation has neither office nor agent within our borders, we cannot compel it to do anything as a condition of the permission and privilege extended to it. But where it has an office or a transfer agent, we are in a position to extend protection to its domestic stockholders.

I do not deem it necessary to refine construction in order to hold the respondents within the statute. It is urged that the word "such," in the sentence beginning, "If any such foreign stock corporation has in this state a transfer agent," refers not to a foreign stock corporation having an office for the transaction of business in this state, but only to a foreign stock corporation other than a moneyed or railroad corporation. I accept the respondents' contention that it refers to a corporation having an office for the transaction of business. What is the meaning of "transaction of business"? It is not necessarily synonymous with the term "doing business," as used elsewhere in this and similar acts. It does not necessarily mean that the main business of the corporation must be carried on in this state, or something in the nature of that business or that capital must be employed in this state. All that the statute requires is that something related to the business of the corporation, or part of it, be carried on in the office here. The transfer of stock is such a transaction of business. It is an essential part of the proper administration of corporate affairs. By the very terms of the certificate, the stock must be transferred on the books of the company, and it is made transferable only in person or by attorney upon a surrender of the certificate. A place is designated in this state where the certificates may be surrendered and the transfer made. That place is a place for the transaction of the business of the corporation—that of transferring its shares of stock. The office of the transfer agent, so far as he transacts the business of the principal, is to that extent the office of the principal. The office of Monroe & Monroe in this case becomes the office of the respondent company for the transaction of business.

I am not in accord with the contention of the respondents that the present section (53) has limited the scope of the one existing prior to the act of 1897. Section 53 of the Laws of 1892, p. 1869, c. 688, provided:

"The transfer agent in this state of any foreign corporation whether such agent shall be a corporation or a natural person, shall, at all times during the usual hours of transacting business, exhibit to any stockholder of such corporation, when required by him, the transfer book, and a list of the stockholders thereof, if in his power to do so, and for every violation of the provisions of this section, such agent, or any officer or clerk of such agent, shall forfeit the sum of two hundred and fifty dollars, to be recovered by the person to whom such refusal was made."

If anything, the present law is broader. Formerly, though the foreign corporation had, independently of its transfer agency, an office for the transaction of other business, the requirement to keep and exhibit the stockbook was not imposed on the corporation itself, but only on the transfer agent. Now, whether the corporation has a transfer agent or not, it is required in all cases where it has an office for the transaction of business in this state to keep and exhibit its stockbook. Where it also has a transfer agent, it may, in the alternative, permit the inspection there; but the mandatory provision of the statute, as expressed in the word "shall," is directed primarily against the corporation itself, where formerly it applied to the transfer agent merely. While the precise question involved on this application has no direct authority for it, the case of Cox v. Island Mining Co., 65 App. Div. 508, 73 N. Y. Supp. 69, disposes of many of the points here involved, and contains a dictum directly in support of the conclusion here expressed. There Justice Woodward, writing for a unanimous court, said:

"The complaint, in addition to alleging that the corporation has an office at 45 Broadway, alleges that it acts as its own transfer agent, and it seems entirely reasonable that the plaintiff, by merely relying upon the presence of the corporation's transfer agent in this state, might have been entitled to recover."

In that case it is also stated, by way of obiter, that the having an office in this state for the transaction of business is not necessarily a jurisdictional fact (at page 512, 65 App. Div., page 72, 73 N. Y. Supp.) which must exist as a condition of compelling deposit of the stockbook. In this memorandum, however, I have preferred to treat the having of such office as jurisdictional, with the result that I have reached the same conclusion intimated in the dictum of the Cox Case. The motion should be granted, with $10 costs.

Motion granted, with $10 costs.