BOHEMIA LUMBER COMPANY, incorporated, an Oregon corporation, Plaintiff,

v.

The EIMCO CORPORATION, a Utah corporation, Defendant.

Civ. No. 63-261.

United States District Court
D. Oregon.

Oct. 10, 1963.

Edward A. Butler of Butler, Husk & Gleaves, Eugene, Or., for plaintiff.

Herbert H. Anderson of Koerner, Young, McColloch & Dezendorf, Portland, Or., for defendant.

KILKENNY, District Judge.

The issues raised on the defendant's motion to quash the service of process are:

(1) Does Oregon law permit the service of process on the Corporation Commissioner on the facts presented?

(2) Was defendant doing business in Oregon, to an extent which would subject it to the jurisdiction of the Oregon Courts?

FACTUAL BACKGROUND

Plaintiff's complaint charges the defendant with numerous fraudulent representations made by defendant's agents to plaintiff in the State of Oregon.

From the evidence before me, I find that defendant, during the period of time in question, engaged in the following activities in Oregon.

(1) Made Gunderson Bros. a distributor by written agreement. A substantial part of the negotiations leading up to the agreement being conducted by defendant's employees in Oregon.

(2) For a substantial period of time defendant directed its factory representative to reside and represent the company in Oregon, the duties of which representative included contacting potential customers, approving orders for parts and participating in demonstrations of defendant's equipment.

(3) Defendant furnished the distributor in Oregon with memoranda covering technical aspects of all of defendant's machines and conducted a direct mail advertising campaign in an attempt to solicit sales in Oregon.

(4) The distributor made sales of defendant's equipment and machines on a "percentage" and likewise on a "discount arrangement". Defendant controlled the prices to be charged by the distributor upon sales in Oregon of defendant's products.

(5) Defendant furnished to distributor a large volume of circulars, pamphlets, catalogs and other literature and materials to be used in the promotion of sales in Oregon, the distributor being the exclusive sales representative for a designated portion of said state.

(6) The agreement provided that distributor would not handle products which would be competitive with those of the defendant and that on the termination of the agreement all orders for equipment and names of purchasers were to be turned over and delivered to defendant.

(7) On occasion, the distributor has returned equipment and machinery to defendant, under a right to do so in said agreement and was reimbursed therefor by defendant.

(8) The defendant made arrangements for the bulldozer, which is the subject of this action, to be transported by truck from Eugene to Salt Lake City.

(9) In 1962, defendant leased a bulldozer to a third party for use in Oregon and through its regular employees assisted in selling, demonstrating, testing and servicing defendant's equipment and machines in Oregon.

(10) In the Agreed Statement of Facts in the Pre-Trial Order filed in this Court in Civil No. 60–476, defendant represented to the Court that the following was true:

"3. That on or about February 20, 1959, in Salt Lake City, Utah, plaintiff Norman Janzen met with Joseph Rosenblatt, President of defendant corporation, (defendant here) to discuss terms of an Eimco dealership contract for part of the Northwest; that Joseph Rosenblatt had the final authority in behalf of defendant corporation to negotiate and enter into all dealership contracts and authority to carry on in behalf of defendant all phases of its business; that James Raven, district representative in Portland, Oregon, for defendant, had been given previous instructions by Joseph Rosenblatt to investigate plaintiffs for a possible Eimco dealership and report to him. This investigation and report was made as directed; that by the authority of Joseph Rosenblatt an announcement was made for publication stating that plaintiffs were the new Eimco dealers in Portland, Oregon; that no dealership contract was ever submitted to plaintiffs for signature.

"4. That plaintiffs called upon many potential purchasers of Eimco equipment, some of which calls were made in the company of James Raven."

(11) The representations alleged in the complaint were made to the plaintiff in Oregon and the bulldozer in question was demonstrated, tested, revised, repaired and serviced in said state, not once but many times on the suggestion of and with the direct assistance and participation of defendant's personnel.

## DECISION

Process in this case was served on the Corporation Commissioner of the State of Oregon as the statutory agent for defendant.

ORS [1] 57.700 provides, among other things, that " * * * the Corporation Commissioner shall be an agent of such corporation upon whom any such process, notice or demand may be served. * * *" (Such corporation) is "[A] foreign corporation authorized to transact business

1. Oregon Revised Statutes.

in this state * * * ", or "any foreign corporation which *transacts* business in this state *without being* authorized as provided in this chapter." (Emphasis supplied.)

The phrase "authorized as provided in this chapter" refers, in the main, to ORS 57.655(1) which provides:

"No foreign corporation shall have the right to transact business in this state until it shall have procured a certificate of authority so to do from the Corporation Commissioner."

The phrase "transact business" is partially defined in ORS 57.655(2) which provides, among other things, that:

"* * * a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities:

* * * * * *

"(e) Effecting sales through independent contractors.

"(f) Soliciting or procuring orders, whether by mail or through employes or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts.

* * * * * *

"(i) Transacting any business in interstate commerce.

"(j) Conducting an isolated transaction completed within a period of 30 days and not in the course of a number of repeated transactions of like nature."

In an able and resourceful argument, defendant's counsel urge that there is a distinction between "doing business", as that phrase is used in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; and Enco, Inc. v. F. C. Russell Co., 210 Or. 324, 311 P.2d 737, and the phrase "transact business" as used in the Oregon statute under which

defendant was served. Defendant argues that far more activities are required to "transact business" than to "do business" and consequently, foreign corporations merely "doing business" in Oregon cannot be served with process in the method provided by the Oregon statutes. Enthusiastic as it is, the defendant's argument does not reach a logical conclusion. No doubt, the Oregon Legislature realized that "doing business" was a much more comprehensive phrase than "transacting business" and used the latter to prevent foreign corporations from avoiding service of process by contending that they were not "doing business" in the state.

■ A "transaction", is defined by the Oregon Supreme Court, as the doing or performing of an affair or of any matter, either completed or in the course of completion. Fouchek v. Janicek, 190 Or. 251, 225 P.2d 783.

Most authorities recognize that "doing business" is a much more comprehensive term than "transacting business" and that a corporation may transact business, without doing business. Perkins v. Benguet Consolidated Mining Co., 155 Ohio St. 116, 99 N.E.2d 515, 522, 524; Smythe v. Forth Worth Glass & Sand Co., 105 Texas 8, 142 S.W. 1157; People ex rel. Miles v. Montreal & B. Copper Co., 40 Misc. 282, 81 N.Y.S. 974.

Other authorities hold that "doing business" is the equivalent of "transacting business". Frye v. Batavia (D.C.D.C. 1943) 8 F.R.D. 334–335; United Mercantile Agency v. Jackson, 351 Mo. 709, 173 S.W. 881; Mills Music Co. v. Lampton, 40 Cal.App.2d 354, 104 P.2d 893; General Conference of Free Baptists v. Berkey, 156 Cal. 466, 105 P. 411; Wilson v. Federal Tax Co., 176 Okl. 90, 54 P.2d 363.

■ It is well settled that the activities required to subject a foreign corporation to service of process are much less than those required to subject a foreign corporation to qualification where the statutes speak of "doing business" in the state. Eclipse Fuel Engineering Company v. Superior Court, 148 Cal.App.2d

736, 307 P.2d 739 (1957) and Fielding v. Superior Court, 111 Cal.App.2d 490, 244 P.2d 968, cert. den. Westwood Pharmacal Corporation v. Fielding, 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 693. In passing, I might add that the California statutes bear some resemblance to those now before me. Our own Court has held that a foreign corporation may be transacting business in the state sufficient to require it to answer the processes of the courts, while such business may not be sufficient to require the corporation's domestication. Enco, Inc. v. F. C. Russell Co., supra.

 Defendant suggests that Hill v. Electronics Corporation of America, 253 Iowa 581, 113 N.W.2d 313, is controlling and very effectively argues that the Iowa statute defining the transaction of business, in that state, is essentially the same as the Oregon statute. Without question, the language of some parts of the statutes are identical. Be that as it may, the activities of Electronics in the Iowa case were of a minor nature, as compared to the activities of this defendant in Oregon. In the last analysis, the Iowa Court merely held that Electronics was not "transacting business" in the state outside of the exclusions mentioned in the controlling statute. Here, the defendant was engaged in activities outside of those exclusions and I so find. On the facts as I find them, the defendant was "doing" and was "transacting" business in Oregon to such an extent that it would not offend traditional notions of fair play for the Court to assume jurisdiction. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Moore-McCormack Lines, Inc. v. Old Dominion Stevedoring Corp., 4 Cir., 307 F.2d 910.

A discussion and analysis of other cases cited by the respective parties would be academic and of no professional use to either the Courts or the profession.

The service of process on the Corporation Commissioner was valid and defendant's motion to quash must be denied.

It is so ordered.