SECURITY COMPANY v. PANHANDLE NATIONAL BANK.

No. 905.  Decided May 31, 1900.

**1. Supreme Court—Jurisdiction—Amount—Consolidated Suits.**

The Supreme Court has jurisdiction to grant writ of error on an action for more than one thousand dollars, though it be a consolidation of two suits for amounts within the jurisdiction of the county court when sued separately. (P. 579.)

**2. Foreign Corporation—Right to Sue—Doing Business in State.**

A foreign corporation does not violate the prohibition of article 745, Revised Statutes, against doing business in this State without obtaining a permit, by purchasing

in another State a bond and mortgage issued by a Texas corporation; nor by bringing suit in this State to enforce collection of such debt acquired elsewhere; nor by adjustment of such debt after so bringing suit by giving extension of time and taking new security. (Pp. 579-582.)

**3. Same—Statutes Construed.**

The business prohibited is the ordinary business of the corporation; article 746 was unnecessary if the mere bringing of suit was prohibited by article 745; article 746 does not prohibit all suits, but merely denies the right of a foreign corporation to bring suit upon any cause of action arising after it has done business in this State without a permit, showing that the bringing of suit was not regarded as prohibited, as such business, by article 745; and if collection of the debt was not such business, its adjustment was not. (P. 580.)

**4. Insurance—Change of Policy—Consent of Beneficiary.**

A mortgagee secured by making an insurance policy on the mortgaged property payable to him as his interest may appear can not be deprived of his interest in such policy by a change in the policy by the insurer and insured, inserted without his consent. (P. 582.)

**5. Charge—Omission—Request.**

Omission to present one of several phases of a case (a right to marshal securities) is not reversible error in the absence of a request for an instruction presenting such issue. (P. 582.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

The suit was brought by the Security Company against the bank. Plaintiff had judgment, which, on defendant's appeal was reversed and rendered for appellant. Appellee then obtained writ of error.

*Ashby S. James*, for plaintiff in error.—The objection that a foreign corporation can not maintain such a suit as the one at bar, can not be maintained when the pleadings of both parties recognize the fact that the mortgage bond sued on in this case, for the security of which the policies here in controversy were written, was merely an extension of the prior mortgage bond which had been given to a Texas corporation, and by it sold to the plaintiff by a broker at its office in Hartford, Conn., and the purchase of said first mortgage bond was a transaction of interstate commerce and was a purchase made wholly within the State of Connecticut. Keating Impl. Co. v. Favorite Carriage Co., 35 S. W. Rep., 417.

The forfeiture clause in the policies in controversy must be construed to relate to a change of interest by the mortgagee, the Security Company, inasmuch as it was recognized on the face of the policy as the assured to the extent that its interest might appear, and neither the sale by the bank of its interest nor the changes made in the policies by the defendant bank and insurance companies, without the consent of the Security Company, could have any effect on the right of the Security Company to the proceeds of such policies. Bank v. Security Co., 44 S. W. Rep., 15.

The policies of insurance in controversy being in full force and effect in favor of the Security Company at the time of its agreement to ex-

tend $7000 of its debt for the bank to be assumed by a new mill company, the bank had no right to have same altered in its favor and thus change the status of the security of the Security Company without its knowledge or consent, and the evidence of the witness Huff was therefore inadmissible to affect the rights of plaintiff. Insurance Co. v. Flippen, 4 Texas Civ. App., 580; Donaldson v. Insurance Co., 32 S. W. Rep., 251; Horning's Appeal, 90 Pa. St., 388; 39 Ill. App., 620; Bank v. Security Co., 44 S. W. Rep., 15; Reid v. McCrum, 91 N. Y., 419; Ames v. Richardson, 29 Minn., 335; Wood on Insurance, sec. 119; 1 Jones on Mortgages, sec. 274.

*R. E. Huff* and *West & Cochran,* for defendant in error.—The amount sued for in each of the consolidated cases being $1000, the Supreme Court would be without jurisdiction (Revised Statutes, article 996, paragraph 3), unless the order to consolidate the causes made in the District Court in pursuance of the agreement of parties confers such right. Mohrhardt v. Railway, 2 Willson C. C., 323; 4 Am. and Eng. Enc. of Pl. and Prac., 678.

Nor does the Supreme Court acquire jurisdiction under section 3 of article 941, Revised Statutes, for the decision only involves the construction and application of the statute, and not its validity. Lumber Co. v. Hardin, 87 Texas, 639.

It was incumbent upon the Security Company to allege and prove that it had a right to maintain this suit. Tabor v. Interstate B. and L. Assn., 91 Texas, 93; Huffman v. Mortgage Co., 36 S. W. Rep., 306; Peters v. Anheuser Co., 55 S. W. Rep., 516; Southern B. and L. Assn. v. Skinner, 42 S. W. Rep., 320; Bank v. Jefferson, 22 S. W. Rep., 211; Holloway v. Railway Co., 23 Texas, 465; Bank v. Simonton, 2 Texas, 531; Land Co. v. Lumber Co., 35 S. W. Rep., 887.

The facts show that the Security Company was transacting business in this State, and hence not having complied with article 745 of the Revised Statutes in failing to obtain a permit to do business in Texas, it had no right to maintain this suit. Farrior v. New England, etc., Co., 88 Ala, 275; 13 Am. and Eng. Enc. of Law, 2 ed., 873; Sullivan v. Sullivan Timber Co., 103 Ala., 371; Myers Mfg. Co., v. Wetzel, 35 S. W. Rep., 896; Paper Bag Co. v. Johnson, 38 S. W. Rep., 364.

"The term 'interstate commerce' prohibits intercourse for the purpose of trade in any and all its terms including transportation, purchase, sale, and exchange of commodities between citizens of different States." Hopkins v. United States, 171 U. S., 599; Welton v. Missouri, 91 U. S., 275; County of Mobile v. Kimball, 102 U. S., 691; Ferry Company v. Pennsylvania, 114 U. S., 196; 1 Interstate Com. Rep., 382; Hooper v. California, 155 U. S., 648; United States v. Knight Company, 156 U. S., 1.

Under the facts shown the acts and transactions do not constitute interstate commerce as that term is construed so as to bring the case

within the rule laid down by this court in Allen v. Tyson Buggy Company, 91 Texas, 22. Nathan v. Louisiana, 8 How., 73; Paul v. Virginia, 8 Wall., 168; Insurance Co. v. State, 86 Texas, 265; Railway Co. v. Dwyer, 75 Texas, 579; Kirtland v. Hotchkiss, 100 U. S., 491.

In any event, whether or not the transaction was such a doing of business as comes within the purview of article 745 was a question of fact for the jury to pass upon, and the trial court ought to have submitted this issue to the jury.

GAINES, Chief Justice.—The Wichita Roller Mill Company, a Texas corporation, borrowed of the Panhandle Loan and Trust Company, another domestic corporation, the sum of $7000, for which the former executed to the latter a bond, secured by a mortgage upon its property. The Loan and Trust Company sold, through a broker in Connecticut, the bond to the plaintiff in error, the Security Company, a corporation organized and domiciled in the latter State. The mill company having made default, the plaintiff in error brought suit upon the bond in the District Court of Wichita County and obtained a judgment for the sum of $8806.36, together with a decree ordering a sale of the mortgaged property for the satisfaction of the debt. The Panhandle National Bank, the defendant in error, having a subsequent mortgage upon the same property, in order to prevent a sale thereof, entered into an agreement with the plaintiff in error by which it bound itself to pay or cause to be paid all of the judgment except the sum of $7000; and, the mill company being insolvent, to cause the $7000 to be assumed by a new company, duly incorporated for milling purposes, and to be secured by a first lien upon the property originally mortgaged. Thereafter, the Wichita Falls Milling Company, presumably a new corporation organized in pursuance of the agreement stated above, executed to plaintiff in error a bond for $7000, together with a mortgage upon the property before mentioned to secure its payment. The mortgagor in the instrument bound itself to keep the buildings upon the lots insured for the benefit of the mortgagee. The Panhandle National Bank executed a formal waiver of its lien in favor of the lien of plaintiff in error, but retained such lien against all other persons. On the 20th of August, 1894, two policies of insurance were issued upon the mill to the Panhandle National Bank for $1000 each, one by Delaware Insurance Company of Philadelphia, and the other by Merchants Insurance Company of Newark, N. J. On the face of each policy appeared the statement, "Loss, if any, payable to the Security Company of Hartford, Conn., as its interest may appear." It would seem that at the time these policies were issued, the Panhandle National Bank had acquired the legal title to the property with a view to transferring to the mill company to be organized in pursuance of its agreement with the Security Company. The property having been destroyed by fire, the plaintiff in error brought suit against each of the insurance companies on its policy, making the defendant in error and the milling company parties defendant. The insurance companies, re-

cognizing the liability and being desirous of discharging it, it was agreed among all the parties that the money should be deposited with the Panhandle National Bank to be litigated for by the plaintiff in error and the defendant in error in the two suits consolidated as one. The deposit having been made, the plaintiff in error filed an amended petition setting up its claim to the consolidated fund. Upon the petition so amended, the case was tried and resulted in a verdict and judgment in favor of the plaintiff. Upon appeal, however, the Court of Civil Appeals held that the plaintiff had been doing business in the State without having filed its charter and obtained a permit as required by the statute, and therefore could not maintain action in our courts. Thereupon the judgment was reversed and rendered in favor of the defendant.

It was suggested upon the argument that this court has not jurisdiction of this case, and this question is the first to be determined. The ground of the contention is that each of the suits as originally brought could have been brought in the county court, and that the consolidation of the two cases does not change the status of the case with respect to our jurisdiction. The case of Mohrhardt v. Railway Company, 2 Willson Civil Cases, section 323, is cited in support of the contention, but does not sustain it. There the plaintiff brought in the county court two suits for services rendered to defendant, over each of which that court had jurisdiction. The defendant moved that the two suits be consolidated and the motion was granted. The plaintiff then moved that the suit as consolidated be dismissed, which motion was also granted. It was held that since the amount claimed in the two suits exceeded the jurisdiction of the county court, it was error to consolidate them. Clearly the court were of opinion that the jurisdiction of the court after consolidation was to be determined by the sum of the two amounts claimed in the suits as originally brought, and we concur in that view. Here the two amounts originally sued for together exceeded $1000, exclusive of interest, and a suit therefor could not have been brought in the county court. We therefore have jurisdiction of this case.

The next question is, did the Court of Civil Appeals err in holding that the plaintiff in error was disabled to sue in our courts by reason of being a foreign corporation and of having done business in this State without complying with our statutes. The laws in question are found in articles 745 and 746 of our Revised Statutes, and so much thereof as does not apply to the facts of this case being omitted, they read as follows:

"Article 745. Hereafter any corporation for pecuniary profit, except as hereinafter provided, organized or created under the laws of any other State, * * * desiring to transact business in this State * * * shall be and the same are hereby required to file with the Secretary of State a duly certified copy of its articles of incorporation, and thereupon the Secretary of State shall issue to such corporation a permit to transact business in this State." * * *

"Article 746. No such corporation can maintain any suit or action, either legal or equitable, in any of the courts of this State upon any demand, whether arising out of contract or tort, unless at the time such contract was made or tort committed, the corporation had filed its articles of incorporation under the provisions of this chapter."    *    *    *

The inquiry which first presents itself to our minds is, has the plaintiff in error done business in this State within the meaning of article 745? The plaintiff in error did not make the original loan. Its first connection with the transaction was the purchase of the bond which had been given by the Wichita Roller Mill Company to the loan and trust company, and the uncontroverted facts show that this transaction was effected in the State of Connecticut by an agent of the latter dealing directly with the plaintiff in error. Very clearly this was not a Texas transaction. The business was done in another State. When, however, the obligation had matured, the plaintiff in error brought suit and obtained a judgment upon it in this State. In the adjustment of its demand, it then entered into a negotiation which resulted in the extension of the debt and the execution of the new security out of which the present controversy arose. The purpose of the statute was probably twofold; one to protect the people of the State from irresponsible foreign corporations by affording the means by which they could readily ascertain such information in reference to them as is ordinarily afforded by their charters, the other to place them upon the same footing as like domestic corporations by requiring them to pay a like fee for a permit to do business as is required of a domestic company for filing its charter. See Rev. Stats., art. 2439. It is to be presumed, therefore, that the business had in view, in making the requirement, was the ordinary business of the company,—the business it was organized to pursue and which its charter empowered it to pursue. Had it been intended to prohibit a foreign corporation from collecting, extending, adjusting, or bringing suit for a debt contracted elsewhere, it would have been easy to have made that intention plain. If it was the purpose of article 745 to deny the corporation the comity which is usually extended throughout the States of the Union of bringing suits in the courts of this State, article 746 was wholly unnecessary. On the other hand that article shows that such was not the purpose. It in effect merely denies the right of a foreign corporation to bring suit upon any cause of action arising after it had done business in the State without a permit, thus showing that it was regarded that bringing a suit in court was not doing business within the purview of article 745. If bringing suit to collect a debt be not doing business within the meaning of the provision in question, how can the adjustment of a debt be such business? The case of Sullivan v. Sheehan, 89 Federal Reporter, 247, was very similar to this both in its facts and as to the law of Minnesota, which was there under construction. In that case the court say: "The Minnesota statutes referred to by counsel, providing for the conditions upon which foreign building and loan associations may transact business in this State, and prohibiting under penalties the

transaction of business by such foreign corporations unless those conditions have been complied with, I think necessarily refers to the ordinary business of such associations. Without complying with those conditions, such foreign corporation would not have the right, by its officers or agents, to come into this State, and there solicit subscriptions for its stock or solicit loans. The same rule applies to any foreign insurance company where similar conditions are required to be complied with before it shall do business in this State; and the business referred to is its ordinary business of insurance. But companies of either of these kinds, if not transacting their ordinary business in this State, and not privileged to transact their ordinary business in this State, not having complied with the conditions of the Minnesota statutes, would not be prohibited, by any proper interpretation of such statute, from investing in the bonds of the State, or of municipal or other corporations of the State, nor from enforcing such bonds. The prohibition of the statute is only against transacting their ordinary peculiar business in this State so long as the statutory conditions are not complied with. The principal question in the case is whether the Chicago association, in contravention of the statute of Minnesota, did business within this State in obtaining the obligations in suit; whether the notes and mortgages in this case were obtained from citizens of this State, by an officer or agent of that company coming into this State, and doing business here; or whether this business was transacted in Chicago, by citizens of Minnesota, who went there to transact the business. I apprehend that the penalties which are denounced by statute against these companies in case they do business with residents of this State apply only to cases where such business is done within the State. Such a statute can not possibly have an extraterritorial effect, so as to prevent a company of that kind, located in Chicago, from transacting business lawfully with a resident of Minnesota who should go to Chicago and transact business there. There is nothing in that statute that would prevent such a resident of Minnesota from going to Chicago, and there applying and subscribing for and acquiring stock of an association of this kind, and there obtaining, if he could, a loan from a corporation of this kind. I think there is nothing in this statute preventing him from there giving security upon property situated in Minnesota to secure such a loan. The prohibition is aimed at such companies as, by their officers or agents, come into the State of Minnesota—within the territorial limits of the State—to solicit and transact business; and can not affect business which they perform outside of the State, where they have a right to transact business, merely because such business is transacted with a resident of the State of Minnesota."

Several of our States have statutes upon the subject of foreign corporations very like our own. The decisions construing these laws are apparently in conflict; but they are probably reconcilable upon the ground that the language of the several statutes is variant and therefore admits of different constructions. For example, in some States the

prohibition is against "doing business," or more strongly, "doing any business," while in others it is against "carrying on business." It would serve no useful purpose to discuss these decisions here, for the reason that the question whether one transaction constitutes "doing business" within the meaning of our statute is not a question which it is necessary to determine in this case. Our opinion is that the plaintiff in error by coming into the State to adjust and collect its demand violated no law which placed it out of the pale of that comity, which, in the absence of a statute, permits a foreign corporation to sue in the courts of this State, and that the Court of Civil Appeals erred in reversing the judgment upon that ground. In this connection, we may add that we have not found it necessary to pass upon the question whether the trial court was in error in charging that the transactions which took place in this State between the plaintiff in error and the other parties thereto constituted interstate commerce.

Having found that the Court of Civil Appeals was in error in reversing the judgment upon the ground that the plaintiff in error had no right to sue in our courts, it becomes necessary that we consider the defendant in error's other assignments properly presented in that court.

It was urged in that court, that because the Panhandle National Bank when it transferred the property to the Wichita Falls Milling Company, caused the agent of the insurance company to write upon the policies, "Loss, if any, payable to the Panhandle National Bank as its interest may appear," and because similar indorsements in favor of the plaintiff in error had been canceled, the latter had no interest in the policies. But it was shown that when the property was transferred by the bank to the milling company, it also transferred the policies with the assent of the insurance companies, and that the canceling of the indorsement in favor of the Security Company and the new indorsement in favor of the bank were made without the knowledge or consent of the former. The Security Company had an interest in the policies, and it could not be deprived of that interest without its consent.

It is also assigned in the Court of Civil Appeals that "the court erred in not charging the jury in reference to the right of the defendant bank to demand of the plaintiff to have the different assets owing from the insurance fund and real estate marshaled and the equities adjusted between plaintiff and bank," etc. This is a case of a failure to give a charge, and made it incumbent upon the defendant to have asked a charge submitting the issue, if it desired to save the point. Besides, we are of opinion that the evidence did not make a case which called for the submission of the issue. The other assignments, in so far as they are properly presented, have been considered, with the result that we find that the trial court committed no reversible error.

The judgment of the Court of Civil Appeals is reversed and that of the District Court affirmed.

*Judgment of Court of Civil Appeals reversed and that of District Court affirmed.*