# JANUARY, 1912

S. R. SMYTHE COMPANY v. FT. WORTH GLASS & SAND COMPANY ET AL.

No. 2184.    Decided January 17, 1912.

1.—Foreign Corporation—Permit to Transact Business—Interstate Commerce.

A contract made in Pennsylvania, by a corporation of that State, to erect in Texas gas producing machinery for a glass factory, involving in its performance the furnishing, shipment and setting up of machinery and materials from outside the State and also the employment in the State of labor to the amount of $917.00 and purchase of materials there to the amount of $155.00, the work requiring five weeks' time and being done under the direction of an agent of the contractor on the ground, was the transaction of business in the State within the meaning of article 745, Rev. Stats., and not mere sale shipment and installing of machinery from another State such as would constitute interstate commerce. The corporation so contracting and performing could not recover therefor in the Texas courts when it had not obtained a permit to transact business in the State as required by such statute. (Pp. 11-18.)

2.—Same—Statute—Transaction of Business.

"Transact business," as used in Rev. Stats., art. 745, defined and distinguished from doing business in the State, the former covering a single transaction, as distinguished from carrying on the main business of the corporation. (Pp. 13, 14.)

3.—Same—Interstate Commerce.

The undertaking of erecting a manufacturing plant in the State under contract, including material and labor, is distinguished from the mere sale of machinery made outside the State and constituting interstate commerce not subject to control by state laws, though incidentally involving its installation and adjustment. (Pp. 14, 15.)

4.—Business in State—Single Transaction.

Performance of a contract in Texas may constitute the transaction of business in the State though it was an isolated transaction. (Pp. 15, 18.)

5.—Same—Cases Discussed.

Beard v. U. & A. Publishing Co., 71 Ala., 60; Security Co. v. Panhandle Natl. Bank, 93 Texas, 580; State Bank of Chicago v. Holland, 103 Texas, 266, followed. Cooper Mfg. Co. v. Ferguson, 113 U. S., 727; Brown v. Guaranty S. L. & I. Co., 40 Texas Civ. App., 295; Oakland Sugar Mill Co. v. Fred W. Wolf Co., 118 Fed., 239, distinguished. (Pp. 15-17.)

6.—Foreign Corporation—Permit—Action—Judgment.

Article 745, Revised Statutes, does not declare void the contract of a foreign corporation not obtaining a permit to do business in the State, but merely prohibits suit upon it in the courts of Texas. Hence the judgment, where action is denied for such reason, should not be that plaintiff take nothing by his suit, which would be an adverse adjudication on his cause of action, but that the suit be dismissed. (P. 18.)

Error to the Court of Civil Appeals, Sixth District, in an appeal from Tarrant County.

Smythe Co. sued the Ft. Worth Glass & Sand Co. Plaintiff had judgment, which was reversed and rendered for defendant on its appeal. Ft. Worth G. & S. Co. v. S. R. Smythe Co., 61 Texas Civ. App., 338. Appellee, plaintiff, then obtained writ of error.

*Flournoy, Smith & Storer,* for plaintiff in error.—The company never having solicited business in Texas or kept an agent in the State, and this transaction being its only one in Texas, and that having not been solicited by the company, but by Woolverton, a citizen of Texas, by mail, addressed to the company, at its home office in Pittsburg, and the contract having been made by mail, passing between Texas and Pennsylvania, the company did not "transact business in this State," or "solicit business in this State," or "establish a general or special office in this State," within the meaning of Art. 745, R. S.

That one transaction is not transacting business within meaning of the statute. Cooper Mfg. Co. v. Ferguson, 113 U. S., 727; Oakland Sugar Mill Co. v. Fred W. Wolf Co., 118 Fed., 239; Brown v. Guarantee, etc., Co., 46 Texas Civ. App., 295; Norton v. Thomas, 93 S. W., 711; 6 Thompson on Corp., sec. 7936.

This contract having first become binding in Pittsburg was a con-

tract made outside of the State of Texas, and could be performed in the State without violation of the statute. Security Co. v. Panhandle Natl. Bk., 93 Texas, 580; Lakeview, etc., v. San Antonio, etc., 95 Texas, 252; 6 Thompson on Corp., sec. 7937.

The transaction involved the installation in the plant of the Glass Company, in Texas, of the gas producers, which were manufactured out of the State, and was therefore interstate commerce, it being virtually a sale of the gas producers. DeWitt v. Berger, 81 S. W., 334; Milan Milling Co. v. Gorton (Tenn.), 27 S. W., 971, 26 L. R. A., 135; Davis v. Caigle (Tenn.), 53 S. W., 240; Cooper Mfg. Co. v. Ferguson, 113 U. S., 727.

*R. M. Rowland,* for defendants in error.—A foreign corporation which has no permit to do business in Texas cannot maintain a suit in the courts of Texas on a contract in the performance of which it has necessarily transacted business in this State. St. Louis E. M. F. Co. v. Beilharz, 88 S. W., 512; Pittsburg Const. Co. v. Railway Co., 154 Fed., 929; Peterson v. Chicago, R. I. & P. R. R. Co., 205 U. S., 364.

The undisputed evidence showed that the work of assembling the material and labor and building these gas producers was a work of considerable magnitude and duration, and involved numerous transactions in Texas and the making of numerous contracts in Texas, and the court erred in not so finding. Same authorities.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This suit was brought in the District Court of Tarrant County on October 16, 1907, by the S. R. Smythe Company, a Pennsylvania corporation, against the Fort Worth Glass & Sand Company, a domestic corporation, to recover the sum of $2,597.38, alleged to be the balance due plaintiff for furnishing the material and building certain glass producers and down takes in the Glass Factory of the defendant situated near the City of Fort Worth, Texas.

The cause of action was founded upon a written contract with Dave Woolverton, who had the contract with the defendant to build its glass factory for the agreed sum of $38,000.00, the plaintiff being a sub-contractor.

Plaintiff sought to recover a personal judgment against the defendant, Fort Worth Glass & Sand Company, for such unpaid balance due upon the contract entered into with Woolverton and to foreclose a mechanic's lien on defendant's factory and ten acres of land upon which the factory is situated.

It is not material to set forth the grounds upon which defendant was sought to be made responsible for the balance due on the contract with Woolverton, as the case must be disposed of without going into its merits. The other defendants made themselves parties to this suit after the litigation had progressed for some time, the defendant corporation having been dissolved by the stockholders, and such other defendants being trustees for the dissolved corporation.

Among a number of other pleas the defendants pleaded that plaintiff was a foreign corporation and, in violation of the laws of Texas, had transacted business in this State without first having filed with

the Secretary of State a duly certified copy of its articles of incorporation and obtaining a permit from the Secretary of State to transact business in this State.   Relying upon this plea, defendants challenged plaintiff's right to sue in the courts of Texas upon any cause of action growing out of such alleged illegal transaction of business.

The issues being submitted to the court without a jury, a personal judgment was denied plaintiff, but the amount of its debt was ascertained and declared a charge against the factory and 10 acres of land upon which it was situated, with foreclosure of the mechanic's lien.

Upon appeal the judgment of the trial court was by the Court of Civil Appeals reversed and rendered.   (Fort Worth Glass & Sand Co. v. S. R. Smythe Co., 61 Texas Civ. App., 388, 128 S. W., 1136.)

The sole question for decision is whether under the facts and circumstances presented, which are practically uncontroverted, the plaintiff transacted business in this State illegally, upon which its cause of action is based.   If it did so transact business in this State it cannot maintain its suit to recover upon any cause of action growing out of such transaction.

The important question then is, admitting the facts and circumstances, do they show plaintiff transacted business in this State within the purpose and meaning of Articles 745 and 746 of the Revised Statutes of Texas?

So much of the articles of the Revised Statutes as bear upon the question under consideration will be here quoted, as follows:

"Art. 745.   Hereafter, any corporation for pecuniary profit, except as herein provided, organized or created under the laws of any other State,   *   *   *   desiring to transact business in this State, or solicit business in this State, or establish a general or special office in this State, shall be and the same is hereby required to file with the Secretary of State a duly certified copy of its articles of incorporation, and thereupon the Secretary of State shall issue to such corporation a permit to transact business in this State."

"Art. 746.   No such corporation can maintain any suit or action, either legal or equitable, in any of the courts of this State, upon any demand, whether arising out of contract or tort, unless at the time such contract was made or tort committed the corporation had filed its articles of incorporation under the provisions of this chapter in the office of the Secretary of State for the purpose of procuring its permit."

The facts show that Dave Woolverton entered into a contract with the defendant, Fort Worth Glass & Sand Company, to construct, complete and equip a factory for it to manufacture glass on its property, and afterwards entered into the following written contract with the plaintiff, the greater portion of the context of which is quoted as being essential to show the exact and complete transaction had by plaintiff:

"Dave Woolverton, Esq., R. R. 5, Box 87, Fort Worth, Texas.

### "PROPOSAL.

#### "Three (3) Gas Producers with Downtakes.

"Dear Sir: We propose to build for you at the plant of the Ft. Worth Glass Company, Ft. Worth, Texas, in close proximity to railroad siding for the convenient unloading of cars containing our materials three (3) center blower water seal gas producers with downtake and cut-off for each, which will consist of the following parts: water seals complete, blowers, blast pipes, blast distributors, lower ash hoppers, shells, top plates, upper and lower poke holes, hoppers, bells, rigging for operating bells, all complete in every respect, the shells proper being lined with 9″ thick of No. 2 fire brick, the backing being red brick, and the bosh castings will be lined with 4½″ of No. 2 fire brick.

"The downtakes will be made of steel plates, each provided with two doors and frames, sand damper frame and sand damper, all complete, and lined with 2½″ of No. 2 fire brick, and will furnish all material, do all work and build the same complete for the sum of Fifty-four Hundred Dollars ($5400.00) for the three, all of which will be subject to the exceptions and conditions hereinafter enumerated.

"*Time of Building:* We can build the hereinafter gas producers with their downtakes in from six to eight weeks from the date of order based upon the present promises of delivery of materials entering into the construction thereof, but in all cases the time for completion is based contingent upon strikes, accidents, delays or causes beyond our control.

"*Guarantee:* We guarantee the hereinbefore specified three gas producers with their downtakes will be constructed in a durable, substantial and proper manner, and nothing but the best of materials will be used in the construction throughout.

"*Material Left Over:* After completing our contract we shall possibly have a moderate amount of brick, clay and cement left over, which is customary, and which we will kindly ask you to take off our hands, we invoicing the same to you at our cost price, plus the cost of unloading.             Yours truly,
"S. R. SMYTHE COMPANY,
" (Signed)    H. E. Smythe, President.

"We hereby accept the above proposal and agree to all the terms and conditions therein set forth, this 19th day of January, 1907.
" (Signed)    DAVE WOLVERTON."

In addition to the above contract, the Court of Civil Appeals found the following facts, which are stated to be without contradiction: "The defendant is a Texas corporation and has its domicile in the State of Texas. Dave Wolverton is a resident of Texas. The plaintiff is a corporation chartered under the laws of the State of Pennsylvania, having its place of business in the City of Pittsburg, in said

State. The contract involved in this suit was solicited entirely by Wolverton by correspondence from him in Texas addressed to plaintiff at its office in Pittsburg, Pennsylvania, and all the negotiations leading up to the contract were conducted by the United States mail between Wolverton in Texas and plaintiff in Pennsylvania, except a part of the negotiations which took place over telephone between Woolverton while in St. Louis and plaintiff in Pennsylvania. The contract was made in the State of Pennsylvania. The work performed by appellee in Texas, in compliance with the contract, consisted of the building and erection of three gas producers with downtakes into the plant of defendant. It required five weeks' time to do this, and appellee in doing the work employed labor in Texas, paying therefor the sum of $917.00, and purchased in Texas certain material, such as red brick, sand, lime and cement of the value of $155.00, and paying therefor. The three gas producers with downtakes were manufactured in states other than Texas and were shipped into Texas by plaintiff, and all other material except that stated above was shipped from other states into Texas by plaintiff. The work performed by plaintiff in Texas was done by it through an agent in charge, who during the entire time remained in the State of Texas. It was admitted that plaintiff had never complied with Article 745, Rev. Stats. and had never obtained a permit from the Secretary of State to transact business in the State of Texas.''

The errors assigned in this court and relied on by plaintiff are in substance that, ''the services shown by the evidence to have been performed in this case and, under the circumstances, did not constitute transacting business within the meaning of Articles 745 and 746, Revised Statutes''; the contract declared on was made in the State of Pennsylvania and merely performed in Texas; plaintiff having no office or agency in Texas and never having solicited business in Texas, it was not necessary for it to have secured a permit from the Secretary of State in order to entitle it to sue; and that the transaction forming the basis of this suit was commerce between the States and not subject to regulation by the State, but exclusively by the Congress of the United States.

The statute requiring the foreign corporation to secure a permit from the Secretary of State, so far as the present case is affected, relates to the transaction of business in this State. Many of the statutes of other States requiring foreign corporations to procure permits base the requirement on the condition ''of doing business'' in such States. We do not desire to put too great stress upon the peculiar language of our statute, yet there seems to be a distinction in those statutes which require the permit of foreign corporations to be secured where they desire ''to do business,'' and where they desire to ''transact business'' in the State. The two terms are not necessarily synonymous. To do business in this State imports a carrying on of business of the corporation for the purposes of its organization, while the transaction of business in this State rather imports the idea of isolated transactions in the line, of course, of the purposes of its creation. The Supreme Court of New York, in the case of People ex rel. Miles v. Montreal & B. Copper Co., 81 N. Y. Supp., 974, in deciding that

case on this subject, said: "What is the meaning of 'transaction of business'? It is not necessarily synonymous with the term 'doing business,' as used elsewhere in this and similar acts. It does not necessarily mean that the main business of the corporation must be carried on in this State, or something in the nature of that business, or that capital must be employed in this State."

"To 'do business' is to carry on any particular occupation or employment for a livelihood or gain, as agriculture, trade, mechanic arts, or profession." (Words & Phrases, Vol. 3, p. 2155.)

The point of disagreement between counsel for the respective parties is not so much with reference to the law of the case, as to the application of the facts of the case to the law. It seems to be definitely settled that the only limitation upon the power of a state to exact conditions allowing foreign corporations to transact or do business within its borders is where such corporation is engaged in interstate commerce. This limitation arises by reason of the Federal Constitution committing to Congress the power to regulate commerce between the states. The exercise of state sovereignty must be in harmony with this provision. Silver Min. & M. Co. v. Pennsylvania, 125 U. S., 181.

Shipping machinery or building material from another State into this State, whether upon orders solicited or unsolicited, within or without this State, constitutes commerce between the States and can be regulated only by Congress. Our statute does not, as it cannot, embrace such transactions. Miller & Co. v. Goodman, 91 Tex. 41; Zuberbier Co. v. Harris, 35 S. W., 403.

The contention that this case comes within the meaning of Interstate Commerce is, we think, clearly met by the terms of the contract declared on, and what was done by plaintiff in its performance. The transaction has no mark of barter and sale. There was no agreement that defendant would purchase any part of the machinery to be used in the construction of the gas producers, and the price agreed upon was for the complete erection or building of the gas producers, including all material and labor. It is immaterial where the agreement was made, whether in Texas or in Pennsylvania. Its performance was to be had in Texas; the work provided for was in line with the business of plaintiff; it was for pecuniary profit; the material was that of plaintiff, a portion of which was purchased and paid for by plaintiff in this State; hands were employed by plaintiff and worked for and under the supervision of plaintiff's agent in Texas. In view of all these facts, it may be asked in what particular was this transaction interstate commerce? The performance of the contract on the part of plaintiff was that of constructing three gas producers with downtakes in this State for pecuniary profit. The price agreed upon was not for machinery or any part of machinery, but was for the construction of such gas producers, including all material and labor. The agreement was a builder's contract, entered into by plaintiff, a foreign corporation, to be performed in this State, and in the line of its business. It contemplated from six to eight weeks for its performance, and was the transaction of the business of erecting or building of gas producers and was in competition with citizens of this State transacting similar business. The agreed price was a gross

sum for the labor and material. To perform this contract it necessarily required transactions of business in this State.

To sustain the contention of plaintiff, it must be upon some other ground than that of interference with Interstate Commerce. The authorities cited by plaintiff and relied upon as sustaining its contention have been carefully examined and we have been unable to apply those cases to the facts of this case. In all the authorities to which we have been pointed by plaintiff, the dominant feature of the transaction is the purchase and sale of machinery upon an agreed price for each separate article, with promise of delivery, and in some cases the installation and adjustment of the machinery so purchased. The installation of the machinery, as provided for in the cases relied upon by plaintiff, is subordinate to the sale of the machinery and hence such contracts in other jurisdictions than ours and under other regulatory statutes than ours, although similar to ours in some instances, have been held to constitute Interstate Commerce and therefore not reached by our statutes. It is not necessary in this case to determine whether such contracts, insofar as they may provide for the installation of machinery in this State, come within the article of the statute under consideration, and no decision of that question is here made.

It is contended that what plaintiff did in building the three gas producers for Woolverton was an isolated transaction and did not indicate a desire or intention to transact business in this State, and hence does not come within the purview of the law. We think it immaterial how many such transactions were had, whether one or a hundred; if the contract and acts of plaintiff in the one instance constituted the transaction of business in this State, the law required it to first procure from the Secretary of State a permit for such purpose. If, on the other hand, the execution of the contract herein set out was nothing more than a purchase and sale of machinery to be shipped from another State to this, then the plaintiff could maintain its suit. However, we think the plaintiff transacted business in this State in violation of the statute.

The Supreme Court of Alabama, in the case of Beard v. U. & A. Publishing Co., 71 Ala., 60, discussing a provision in the Constitution of that State prohibiting any foreign corporation from transacting any business there before doing certain things specified, gives in a few words a very satisfactory definition of what is meant by transacting business, as follows: ''There must be a doing of some of the work, or an exercise of some of the functions, for which the corporation was created, to bring the case within that clause.''

The facts of the case under investigation bring it strictly within the rule laid down in the Alabama case.

To a like effect is the definition given by the Supreme Court of this State in the case of Security Co. v. Panhandle Natl. Bank, 93 Texas, 580, as follows: ''It is to be presumed, therefore, that the business had in view, in making the requirement (to secure a permit), was the ordinary business of the Company,—the business it was organized to pursue and which its charter empowered it to pursue.'' * * * ''The prohibition of the statute is only against transacting

their ordinary peculiar business in this State so long as the statutory conditions are not complied with.''

That the contract declared on by plaintiff and the things done in compliance with that contract constituted the transaction of business in this State we have no doubt. If any doubt existed as to the legal effect of that contract and its performance in this State to constitute it the transaction of business, we would be able to solve the question without doubt as upon precedent. In the case of State Bank of Chicago v. Holland, 103 Texas, 266, 126 S. W., 564, the Court of Civil Appeals of the Sixth District certified to this court the question whether or not the State Bank of Chicago as a bona fide holder of a note transferred to it for value and before maturity, could sue on said note in this State, where such note had been given the assignor, a foreign corporation, for building a Canning Factory in this State, without first securing a permit to transact business in this State. The facts showed that the foreign corporation entered into a contract with citizens in Upshur county, Texas, to furnish all material and labor and build for the gross sum of Five Thousand Nine Hundred and Sixty Dollars a Canning Factory. The Canning Factory was built, and this transaction was held by the Court of Civil Appeals to constitute the transaction of business in this State in contemplation of Articles 745 and 746 Revised Statutes. The Supreme Court, in assuming jurisdiction to answer the question certified, necessarily passed upon and approved the holding of the Court of Civil Appeals to the effect that the one or isolated transaction of performing in this State a contract to furnish material and labor and construct a Canning Factory for a gross consideration constituted the transacting of business in violation of the statutes here under construction.

We are referred by plaintiff's counsel to the following authorities, upon which reliance is had to support the contention that a single or isolated transaction of business in this State by a foreign corporation does not require the procurement of a permit under Article 745, Revised Statutes: Cooper Mfg. Co. v. Ferguson, 113 U. S., 727; Brown v. Guaranty Savings, Loan & Investment Co., 46 Texas Civ. App., 295, 102 S. W., 138; Oakland Sugar Mill Co. v. Fred W. Wolf Co., 118 Fed. Rep., 239; Thompson on Corporations, vol. 6, sec. 7936.

As suggested by our Supreme Court in the case of Security Co. v. National Bank, 93 Texas, 581: ''Several of our States have statutes upon the subject of foreign corporations very like our own. The decisions construing these laws are apparently in conflict; but they are probably reconcilable upon the ground that the language of the several statutes is variant and therefore admits of different construction.''

In the case of Cooper Mfg. Co. v. Ferguson, supra, the court construed the Constitution and statutes of the State of Colorado, which in effect provide that, ''foreign corporations shall, before they are authorized or permitted to do any business in this State, make and file a certificate, signed by the President and Secretary of such corporation, etc., and in the office of the Recorder of Deeds of the county in which such business is carried on, designating the principal place where the business of such corporation shall be carried on in this

State, etc.," not to apply to a single or isolated transaction, upon the theory that, taking the Constitutional provision in connection with the statute, it was evident that the law contemplated a carrying on of business, which was not constituted by a single act.  However this may be, the facts of that case did not call for a construction of the laws of Colorado on this subject further than to determine whether such laws were in conflict with the commerce provision of the Federal Constitution, for the facts disclosed that the business complained of as having been carried on was the mere making of a contract in Colorado by a citizen of that State with a foreign corporation to manufacture in another State certain machinery, which the Colorado citizen agreed to purchase and the foreign corporation agreed to make in its own State and ship to Colorado for a stipulated price. This was clearly commerce between the States, and it was immaterial whether there was a single or a multiplicity of such transactions, it was nevertheless Interstate Commerce and could not be interfered with by any State law.

The case of Brown v. Guaranty Savings, Loan & Investment Co., supra, does not support plaintiff's contention.  That case simply decides that where a foreign corporation brought suit on a note and to foreclose a vendor's lien, it was not necessary to allege that a permit to transact business in this State had been procured.  While the Court of Civil Appeals, in disposing of that case, makes use of the words, "single transaction," it is not to be inferred that it was intended to be held that the doing of a single transaction of business in this State by a foreign corporation in pursuance of its regular business as indicated by the purposes of its organization would not come within the meaning of Article 745.  This is evident in view of the statement in the opinion in that case by Judge Rainey that "it is not even shown that said transaction was made in Texas."

The case of Oakland Sugar Mill Co. v. Fred W. Wolf Co., supra, is more in point than any authority cited by plaintiff, and would have great weight in determining the question involved in this suit if it were not for the fact that our courts have held differently, and the Michigan statute, which was the subject of construction by Judge Lurton, is materially different from our statute on the same subject. The Michigan statute was one providing a franchise tax to be imposed upon all foreign corporations which had been permitted to transact business in that State, and provided that contracts by such corporations without the payment of the franchise tax imposed should be rendered null and void.  The Circuit Court of United States construed the Michigan statute to mean "that no foreign corporation shall begin any business in the State with the purpose of transacting or carrying it on until it shall have paid the franchise tax required by this law, and that, if it does so without complying with the law, all contracts made in the State in the conduct of that business shall be void."  The holding in that case is in apparent conflict with the holding of our courts, unless a different rule of construction should be applied to the Michigan statute by reason of the fact that the contract is made null and void as a penalty for non-payment of the franchise tax, while our statute imposes the penalty of denying such

corporation the right to sue upon such contract. By the Michigan act the contract is damned, while the Texas act leaves the contract in its original condition, but denies its enforcement in our courts.

In view of the purpose for which our statute was enacted, requiring that foreign corporations shall procure permits to do business in this State, we think the rule adopted by our court to be the correct rule. As to the purpose for which this statute was enacted, Judge Gaines, in the case of Security Co. v. Nat'l Bank, 93 Texas, 580, lays down the following: "The purpose of the statute was probably two-fold; one, to protect the people of the State from irresponsible foreign corporations by affording the means by which they could readily ascertain such information in reference to them as is ordinarily afforded by their charters, the other to place them upon the same footing as like domestic corporations by requiring them to pay a like fee for a permit to do business as is required of a domestic company for filing its charter."

In support of the proposition that a single transaction of business in this State by a foreign corporation in pursuance of the purpose of its organization was in contemplation of the Legislature at the time of enacting this law, we direct attention to the peculiar provisions of Article 745, in providing that any foreign corporation "desiring to transact business in this State, or solicit business in this State, or establish a general or special office in this State," shall procure a permit before doing so. It will be observed that a desire on the part of the foreign corporation to do either of three things, to transact business, or solicit business, or establish a general or special office in this State, is required to procure a permit. The fact that the act contemplates the transaction of business in this State without the establishment here of a general or special office suggests the idea that it was the evident intent of the Legislature to prevent a single, isolated, or any transaction of business in this State by a foreign corporation when done in pursuance of its general business as authorized by its charter. Any portion of said act which might be construed to indicate that the legislative intent was only to prevent the carrying on or doing of business in this State permanently or enduringly inaugurated by the foreign corporation, is only justified, as we believe, from that portion of the act which refers to the establishment of a general or special office for such purpose, which is an independent and elective provision of such act.

In holding the performance of the contract sued on by plaintiff, under the facts and circumstances herein detailed, to be in violation of Articles 745 and 746, we think the Court of Civil Appeals entirely correct, and, insofar as the opinion of that court so holds, it is approved by this court. We think, however, since the law of this State does not render void the contract made and performed in the transaction of business in this State by the foreign corporation without a permit, but only denies such corporation the right to enforce such contract or cause of action arising out thereof in the courts of this State, the judgment rendered should have been one dismissing plaintiff's suit in the trial court. By rendering judgment that plaintiff take nothing by its suit, plaintiff is denied the right to enforce its

contract in other jurisdictions, should it desire so to attempt to do. Rendering judgment that it take nothing by its suit is in effect holding the contract sued on as null and void. This, we think, should not have been done. The judgment of the trial court will be reversed and the judgment of the Court of Civil Appeals will also be reversed insofar as it renders judgment that plaintiff take nothing by its suit, and plaintiff's suit will be dismissed, and it is so ordered. The costs will be adjudged against defendant in error.

*Judgment of Court of Civil Appeals Reformed and Affirmed.*