**FATE–ROOT–HEATH CO. v. HOWARD KENYON DREDGING CO. et al.**

**No. 10607.**

Court of Civil Appeals of Texas. Galveston.
May 19, 1938.

Rehearing Denied June 9, 1938.

548

Virgil Childress and Lawler, Wood & Childress, all of Houston (Virgil Childress, of Houston, of counsel), for appellant.

Fouts, Amerman & Moore and Austin Y. Bryan, Jr., all of Houston, for appellees.

GRAVES, Justice.

This is an action on a $1929.95 note, executed and delivered to The Fate-Root-Heath Company, appellant, by the Howard Kenyon Dredging Company, acting through Howard Kenyon, President, in payment for repairs and parts, many of which were purchased locally, and labor performed by the agents of appellant foreign corporation, which had no permit to do business in this State, in repairing and reconditioning a locomotive engine in Houston, Texas. The note was executed in Wharton, Texas, is payable in Houston, Texas, and was executed in payment for repairs made on a locomotive engine in Houston, Texas, by the agents of appellant corporation several years subsequent to the sale and shipment of such locomotive into this State; it is an action on a note which has arisen out of a contract entered into by the parties hereto in this State—separate and distinct from, as well as subsequent to, such original shipment of the engine into Texas—which contract called for the performance by appellant's agents of local work in this State, in line with the business in which appellant corporation is engaged for pecuniary profit in the State of its domicile.

In answer to plaintiff's petition, defendants filed pleas in abatement, asserting that plaintiff was a corporation organized and existing under the laws of the State of Delaware, that it had never been granted a permit to do business in Texas, that the note sued on was given to plaintiff at a time when it was unlawfully transacting business in Texas without a permit, and that by virtue of the provisions of Articles 1529–1536, inclusive, Texas Revised Civil Statutes of 1925, Vernon's Ann.Civ. St. arts. 1529–1536, plaintiff was not entitled to prosecute this suit.

The trial court sustained the pleas in abatement and dismissed plaintiff's suit. Findings of fact and conclusions of law were prepared and filed by the trial court, which were as follows:

"Findings of Fact.

"The Fate-Root-Heath Company is a foreign Corporation incorporated for pecuniary profit under the laws of the State of Delaware, and has never at any time filed its articles of incorporation with the Secretary of State of Texas and has never had issued to it at any time a permit to transact business in this State. The Fate-Root-Heath Company is engaged in the business of manufacturing and selling new gasoline locomotives and other machinery and is also engaged in the business of reconditioning, repairing, reselling, and exchanging second hand locomotives and other machinery, and that said company retains in its employ repairmen whose duty it is, in carrying out the business of the corporation, to make repairs and adjustments on locomotives and other machinery.

"The Fate-Root-Heath Company has its office and principal place of business in Plymouth, Ohio, and the only factory and shops which it maintains are located at that place, and it does not maintain an office, factory, workhouse, or shop in Texas.

"In the year 1931 the Howard Kenyon Dredging Company, acting by and through its President, Howard Kenyon, contracted to purchase a 35-ton Plymouth locomotive from The Fate-Root-Heath Company, which machine at the date of its sale was located in Plymouth, Ohio, and was shipped to the Howard Kenyon Dredging Company at Magnolia, Texas, in 1931. The sale was evidenced by the conditional sales contract, a photostatic copy of which is attached to the Statement of Facts. Said contract was procured in Houston, Texas, and accepted by The Fate-Root-Heath Company at its office in Plymouth, Ohio. That as set out in said contract, the Howard Kenyon Dredging Company, acting by and through its President, Howard Kenyon, executed its promissory notes totalling

the sum of $10,000.00 in payment therefor, none of which notes have ever been paid.

"The consideration for the $1929.95 note upon which plaintiff's suit is based, which note although dated Houston, Texas, was executed and delivered in Wharton, Texas, was an agreement between the Howard Kenyon Dredging Company, acting by and through its President, Howard Kenyon, and I. S. Hixon, duly authorized agent for The Fate-Root-Heath Company, which agreement was negotiated and consummated in Houston, Texas, during the latter part of June or early part of July, 1933, and was as follows: That The Fate-Root-Heath Company, acting by and through its agent, I. S. Hixon, would take possession of said 35-ton gasoline Plymouth Locomotive No. 3466, which had not been paid for in accordance with the terms of said conditional sales contract, and recondition and repair said locomotive in Houston, Texas; that upon the completion of the work The Fate-Root-Heath Company, acting by and through I. S. Hixon, agreed to resell said locomotive and credit the proceeds from its resale on the said purchase money notes executed by the Howard Kenyon Dredging Company. The Howard Kenyon Dredging Company, acting by and through its President, Howard Kenyon, agreed to deliver possession of said locomotive to I. S. Hixon, agent for The Fate-Root-Heath Company, and also agreed to pay for the cost of reconditioning and repairing said locomotive, including all labor and material, and in payment therefor to execute its promissory note payable to The Fate-Root-Heath Company for the total amount when the repairs were completed. At the time said agreement was made, I. S. Hixon, acting as agent for The Fate-Root-Heath Company, represented to Howard Kenyon, President of the Howard Kenyon Dredging Company, that said reconditioned locomotive could and would be resold for more than enough to discharge the original purchase money notes and pay for the cost of the repairs, and that Howard Kenyon, in said capacity, relied on Hixon's representations in executing said note.

"In pursuance of this agreement said locomotive, which had been in this state since its original delivery to the Howard Kenyon Dredging Company at Magnolia, Texas, in 1931, was delivered to The Fate-Root-Heath Company, under an order of court appearing at page 49 of the Statement of Facts, and that said locomotive was then taken by I. S. Hixon, acting as agent for The Fate-Root-Heath Company, to the tracks of the Smith Construction Company in Houston, Texas, and there repaired during the latter part of August and first of September, 1933, by I. S. Hixon and three other men employed for that purpose by I. S. Hixon as agent for The Fate-Root-Heath Company. That I. S. Hixon was present at all times and made these repairs himself along with the other men which he had employed, and supervised the performance of this reconditioning and repair work. That numerous parts necessary in making said repairs were purchased in Houston, Texas, and that some of the parts were furnished by the factory of The Fate-Root-Heath Company. That upon completion of the reconditioning and repair work by The Fate-Root-Heath Company, I. S. Hixon, its agent, presented Howard Kenyon, President of the Howard Kenyon Dredging Company, with an itemized statement setting out the costs incurred by The Fate-Root-Heath Company in repairing and reconditioning said locomotive and mailed to Howard Kenyon a letter evidencing such expenditures. This letter did not set out the true agreement entered into between the parties and this letter was never answered. The true agreement between the parties was as set out above and the note for $1929.95 upon which plaintiff's action is based was executed in payment for the cost of reconditioning and repairing the said locomotive in Houston, Texas, including the cost of parts and labor expended in making said repairs, as above set out. Howard Kenyon never at any time agreed to sign this note personally or that he should ever be held individually liable for the cost of said repairs. After said machine had been repaired and reconditioned in Houston, Texas, as above set out, I. S. Hixon, acting for and in behalf of The Fate-Root-Heath Company, negotiated and consummated a resale of this 35-ton locomotive in this state to The Texas Quarries Company for $9,250.00.

"I. S. Hixon is a resident agent of this state for The Fate-Root-Heath Company and in performing his duties as such agent he has not only solicited and made sales of new locomotives manufactured by The Fate-Root-Heath Company in its factory at Plymouth, Ohio, for which sales he received ten per cent commission, but that he has also negotiated and made contracts for the sale of second-hand locomotives

550

which he has repossessed or accepted in exchange for other machines which he has sold to purchasers in this state. That I. S. Hixon, acting for The Fate-Root-Heath Company, has accepted machines and locomotives in this state which have been manufactured by other companies, in exchange for the sale of its locomotives to purchasers in this state, and that at least one of these locomotives manufactured by another company and so accepted in exchange is now located in Texas, and that I. S. Hixon, acting in said capacity, has solicited and negotiated for its sale. I. S. Hixon has on several occasions placed parts on Locomotives located in this state as agent and repairman for The Fate-Root-Heath Company. That The Fate-Root-Heath Company paid I. S. Hixon to make the repairs on the said 35-ton locomotive which had been previously sold to the Howard Kenyon Dredging Company and also paid his expenses incurred in negotiating and consummating said agreement with Howard Kenyon. The Fate-Root-Heath Company, on another occasion, sent repairmen into this state to make repairs and replace and adjust parts on a machine that had come to rest in this state.

"I. S. Hixon negotiated the sale of a 25-ton Plymouth locomotive between Howard Kenyon and the Champion Paper & Fibre Company, which machine had been previously purchased from The Fate-Root-Heath Company by Howard Kenyon Dredging Company, and he agreed and did make repairs on this machine in Houston, Texas, and purchased parts and employed labor in Houston, Texas; that immediately after said repairs were completed and sale consummated that I. S. Hixon, acting as agent for The Fate-Root-Heath Company, garnisheed the proceeds from said sale.

"Conclusions of Law.

"From the foregoing Findings of Fact, I conclude that The Fate-Root-Heath Company, a Delaware Corporation, and plaintiff in this suit, has solicited and transacted business in this state of a purely local and intrastate nature without a permit to do business in this state, as required by Article 1529, Vernon's Rev.Civil Statutes, and that since said Corporation had no permit to do business in this state at the time said agreement was entered into, and note upon which its suit is based was executed, defendants' and interveners' pleas in abatement should be sustained and plaintiff's cause dismissed.

"Ben F. Wilson, Judge."

Neither side attacks these findings of fact, on the contrary both rely thereon as having been conclusively, if not undisputedly, supported by the testimony, the appellant, on the one hand, insisting here that they required a judgment in its favor below, while, on the other, the appellees assert the decree so rendered in their favor to have been the only one that could have been properly entered thereon.

Appellant's propositions for a reversal are these:

(1) "It appearing from the uncontradicted evidence and the trial court's findings of fact that the note upon which this suit is based was executed and delivered to plaintiff, The Fate-Root-Heath Company, by the defendant, Howard Kenyon Dredging Company, in compromise and settlement of a debt created by the sale in interstate commerce of a locomotive ordered by said defendant, a resident of Texas, from plaintiff, a resident of Delaware, and shipped by plaintiff from Ohio to said defendant in Texas, plaintiff has the right, without obtaining a permit to do business in Texas, to prosecute a suit in the courts of Texas for recovery of the debt evidencing said note;" (2) and this, "even if plaintiff has been engaging in other transactions of an intrastate character (which is denied)."

It cites in support of its position these authorities: Articles 1529 to 1536, inclusive, R.S. of 1925; 11 Texas Jur. 162, 163; Alexander Co. v. Lazeres, Tex.Civ.App., 7 S.W. 2d 599; American Co. v. Hairston, Tex.Civ. App., 69 S.W.2d 546; Caddell v. J. R. Watkins Co., Tex.Civ.App., 227 S.W. 226; Crisp v. Christian Moerlein Co., Tex.Civ.App., 212 S.W. 531; Cruncleton v. Chicago Co., Tex.Civ.App., 16 S.W.2d 851; Jackson Woolen Mills v. Moore, Tex.Civ.App., 154 S.W. 642, writ of error dismissed; North v. Mergenthaler Co., Tex.Civ.App., 77 S.W. 2d 580, writ of error refused; Phelps v. Jesse French Co., Tex.Civ.App., 65 S.W.2d 374; Security Co. v. Panhandle Nat. Bank, 93 Tex. 575, 57 S.W. 22; Texas & P. Ry. Co. v. Davis, 93 Tex. 378, 55 S.W. 562, reversing 54 S.W. 381.

The appellees, contra, and in support of the learned trial court's action, counter with several presentments, which may be thus epitomized:

(1) "A foreign corporation which is engaged in the state of its domicile in the business of manufacturing, selling, reconditioning, and repairing new and used locomotive engines, and, through its agents, enters into

this state without a permit to transact business and takes possession of a locomotive-engine several years before sold in interstate commerce by it to a Texas corporation and used by it in a purely local business, and there performs labor in repairing same of a purely local nature, in line with the business in which such corporation is elsewhere engaged for pecuniary profit, and then resells same in this state, is precluded from suing on a note executed in payment for such repair work and services rendered in connection with such resale by the terms of R.S. Articles 1529 and 1536."

(2) "Although a foreign corporation may enter into this state and negotiate in the usual and customary manner for the adjustment and settlement of an account arising out of a sale in interstate commerce, and in so doing may take security, enter into extension agreements and the like, and later sue on such obligation without first obtaining a permit to transact business in this state,—a corporation engaged elsewhere in the business of manufacturing, reconditioning, repairing, and selling new and used locomotive engines, which enters into this state without a permit to do business herein and takes possession of a locomotive engine so sold by it several years previously to a Texas corporation, and under an agreement with such corporation takes possession of said locomotive, and there repairs and reconditions same in this state and accepts a note in payment for such repairs, labor, and services, and thereafter resells said locomotive in this state, and under its agreement credits the proceeds of such resale on said original purchase-money notes, has not by so doing merely adjusted or compromised an account, but has transacted business in this state of a purely local nature in violation of the provisions of Articles 1529 and 1536."

They, in turn, rely in the main upon these authorities: R.S. articles 1529 and 1536, Vernon's Ann.Civ.St. arts. 1529 and 1536; Elliott Co. v. Clevenger, Tex.Civ.App., 300 S.W. 91; Browning v. City of Waycross, 233 U.S. 16, 34 S.Ct. 578, 58 L.Ed. 828; General Railway Co. v. Commonwealth, 246 U.S. 500, 38 S.Ct. 360, 62 L.Ed. 854; Dalton Co. v. Commonwealth, 246 U.S. 498, 38 S. Ct. 361, 62 L.Ed. 851; York Mfg. Co. v. Colley, 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 963, 11 A.L.R. 611; Motor Supply Co. v. General Adv. Company, Tex.Civ.App., 44 S.W.2d 507; Alexander Co. v. Boxwell, Tex.Civ.App., 56 S.W.2d 676; Bryan v. Bowser & Co., Tex.Civ.App., 209 S.W. 189; Smythe Co. v. Fort Worth Co., 105 Tex. 8, 142 S.W. 1157; North American Co. v. Vick Company, Tex.Civ.App., 243 S.W. 549; St. Louis Co. v. Beilharz, Tex.Civ.App., 88 S. W. 512.

■■■■ This court, after careful consideration of the issue of law thus raised, concludes that—as applied to the findings so made, which must here be regarded as established facts—the judgment rendered below was correct; since the comprehensive brief by the appellees' able attorneys, under oral argument in support thereof by Hon. A. E. Amerman, Jr., so clearly reflects its own views, this much of it is adopted as its own herein:

"The principle of law stated in appellant's First Proposition has no application to the facts of the case at bar, for the following reasons: It has been held by our Texas courts that a foreign corporation without obtaining a permit to do business in this State might send its agents into Texas and in the usual and prevailing manner adjust, or extend a debt, or accept a chattel mortgage or deed of trust, or otherwise secure an obligation which arose originally in interstate commerce; but there are no authorities in this State which hold that a foreign corporation following a particular line of business in the State of its domicile can enter this State without a permit to do business and perform in this State business of a purely local and intrastate nature, in line with the business in which it is engaged, and thereby obtain obligations which are enforceable in our State courts. Could it be said that a foreign corporation admittedly engaged in the business of manufacturing, reconditioning, repairing, and selling new and used locomotive engines can send its agents into this State, hire labor, purchase parts, and perform a purely local repair job, and thereafter sue on a note taken in payment for such work on the theory that such work and labor, performed in line with the business in which such corporation is engaged, constituted interstate commerce, because such work was done to compromise or adjust another debt which arose out of a separate and distinct interstate transaction? A careful investigation of the cases cited by appellant will disclose that there is no case which holds that a foreign corporation without a permit can enter into a State and adjust an account by performing local work in line with the business in which the corporation is engaged in the State of its domi-

cile. There is no magic in the phrase 'in compromise and settlement of a debt created by sale in inter-state commerce.' Let us assume that, as an incident to the original sale of this locomotive by The Fate-Root-Heath Company to Howard Kenyon Dredging Company, the former company had agreed that, in the event the Howard Kenyon Dredging Company could not pay for its machine, it would send its repairmen into the State of Texas and repair and recondition the locomotive in that State, in return for which the Howard Kenyon Dredging Company would execute its note for the cost of the repairs and then permit the agent for The Fate-Root-Heath Company to resell the locomotive and apply the proceeds on the original purchase-money notes. Would any court in this State hold that The Fate-Root-Heath could perform such contract without a permit, enter into this State, and then sue on the note given in payment for such local work, bearing in mind that such repair work is a type of work in which that company is engaged in the State of its domicile? How then can appellant take the position that such contract, made after the original sale and shipment of its locomotive had terminated, could be entered into and enforced in this State without obtaining a permit to do business? If The Fate-Root-Heath Company had merely entered into this State and taken a mortgage on some property owned by the Howard Kenyon Dredging Company, or extended the notes, or entered into any other usual and customary agreement which did not call for the performance of purely local services in line with the business in which that corporation is engaged in a foreign State, then of course appellant's First Proposition would be applicable to the case at bar. We need only to turn to the purposes which the Legislature of this State had in mind in promulgating Articles 1529 and 1536 to see that the proposition, which appellant is asserting should apply to this case, is unsound. The courts of this State have stated that the reason for requiring a foreign corporation to obtain a permit before transacting local business in this State

was in the first place to prevent fly-by-night corporations from entering this State and incurring obligations, either contractual or tort obligations, and then withdrawing, rendering suit against them in the State courts impossible or impractical, and in the second place to create revenue. The importance which the Legislature attached to the first reason is obvious from the reasonableness of the fees. Does the fact that a foreign corporation is attempting to adjust and settle a previous account, which arose in interstate commerce, in any way alter the situation? Contract obligations can certainly be incurred while performing such local business, workmen can be injured, and nothing is to prevent a foreign corporation from fleeing the State, free from process. Suppose the parts which Mr. Hixon agreed to purchase in Houston, Texas, had not been paid for, or suppose one of the laborers hired by him to aid in the performance of this purely local work had been injured. It can readily be seen that difficulties would confront the injured party if this foreign corporation should withdraw from the State. Obviously to sustain appellant's proposition would be not only to abrogate the effectiveness of our foreign corporation statutes, but would also encourage the violation of those statutes under the guise of the settlement and adjustment of an account which originally arose in interstate commerce.

"The distinction between the cases which support the general proposition asserted in appellant's First Proposition and the case at bar is clear; they have no application to a situation where the plaintiff corporation, in settling or compromising an account which originally arose in interstate commerce, enters this State and performs labor of a purely local nature in line with the business in which such corporation is engaged in the State of its domicile for pecuniary profit."

Further discussion is foreborne; the judgment will be affirmed.

Affirmed.

PLEASANTS, C. J., absent.