NORMANDIE OIL CORPORATION V. OIL TRADING COMPANY, INC.

No. 7863. Decided April 8, 1942.
Rehearing overruled July 8, 1942.
(163 S. W., 2d Series, 179.)

*Wm. N. Bonner, Lawler, Wood & Childress,* of Houston, *Black, Graves & Stayton,* of Austin, for plaintiff in error.

The Texas laws do not authorize the forming of a corporation to engage in the business of real estate brokerage, and the attempted conduct of such business is in violation of State policy, and an action for commissions brought by a foreign corporation, which has no permit to do business in the State, for the sale of an oil lease, will not be enforced in the Texas Courts. Empire Mills v. Alston Grocery Co., 15 S. W. 505, 12 L. R. A. 366; Fowler v. Bell, 90 Texas 150, 37 S. W. 1058; Thompson on Corporations (3rd Ed.) sec. 788; 17 Fletcher Cyc. of Corp. 131.

*Sewell, Taylor, Morris & Connally, Walton D. Taylor, Ben G. Sewell, J. Toll Underwood,* all of Houston, *John S. Keith,* and *Joseph W. Murphy,* of New York City, *Greenwood, Moody & Robertson* and *Thos. B. Greenwood,* of Austin, for defendant in error.

Since the rights of the parties were fixed by express contract, making all that was done in Texas inconsequential and ineffective, and plaintiff's right to recover his commission under said written contract was in no wise dependent on whether the agent or his corporation did anything to promote the sale in or out of Texas and because what was done was severable from all that preceded, the issues presented in the pleadings precluded a dismissal of the suit by the court. Lafield v. Maryland Casualty Co., 119 Texas 471, 33 S. W. (2d) 466; Okla. Tool & Supply Co. v. Daniels, 290 S. W. 727; Continental Supply Co. v. Hoffman, 135 Texas 555, 144 S. W. (2d) 253.

MR. JUSTICE SHARP delivered the opinion of the Court.

This is a suit for a broker's commission. Oil Trading Company, Inc., a New York corporation, having no permit to transact business in Texas, hereinafter referred to as plaintiff, instituted this suit in the District Court of Harris County against Normandie Oil Corporation, a Delaware corporation, hereinafter referred to as defendant company, and others, to recover a commission on the sale of an oil and gas lease on land located in Montgomery County, Texas. Trial was to a jury; which found that the defendant company employed the plaintiff to negotiate a sale of the lease to Tide Water Oil Company; that the defendant company accepted the benefits of plaintiff's services; and that the plaintiff was the "procuring cause" of the sale. Based on the jury's verdict, the trial court entered a judgment for plaintiff in the sum of $19,437.50. Defendant requested an instructed verdict, and after the verdict was returned it moved for judgment non obstante veredicto. Both motions were overruled. The Court of Civil Appeals affirmed the judgment of the trial court. 147 S. W. (2d) 557. This Court granted a writ of error.

The controlling question presented is whether plaintiff, a foreign corporation without a permit to transact business in this State, can maintain a suit in the courts of this State to recover compensation for services rendered, in the face of undisputed evidence that a substantial part of such services,

upon which its cause of action is based, were performed in Texas, in violation of Articles 1529 and 1536, Vernon's Annotated Civil Statutes. The pertinent parts of Articles 1529 and 1536 read as follows:

"Article 1529. Any corporation for pecuniary profit, except as hereinafter provided, * * * desiring to transact or solicit business in Texas, or to establish a general or special office in this State, shall file with the Secretary of State a duly certified copy of its articles of incorporation; and thereupon such official shall issue to such corporation a permit to transact business in this State for a period of ten years from the date of so filing such articles of incorporation. If such corporation is created for more than one purpose, the permit may be limited to one or more purposes."

"Art. 1536. No such corporation can maintain any suit or action, either legal or equitable, in any Court of this State upon any demand, whether arising out of contract or tort, unless at the time such contract was made, or tort committed, the corporation had filed its articles of incorporation under the provisions of this Chapter." * * *

In the case of Security Co. v. Panhandle Nat'l Bank, 93 Texas 575, 57 S. W. 22, discussing Article 745, now Article 1529, it was said:

"The purpose of the statute was probably two-fold; one, to protect the people of the State from irresponsible foreign corporations by affording the means by which they could readily ascertain such information in reference to them as is ordinarily afforded by their charters, the other to place them upon the same footing as like domestic corporations by requiring them to pay a like fee for a permit to do business as is required of a domestic company for filing its charter."

Plaintiff alleged that it was a corporation duly incorporated under the laws of the State of New York, and was "legally engaged in the business, among other things, of acting as broker or agent in the purchase and sale of oil, oil products, oil production in bulk, oil leases, and generally in all matters involving the production, transportation, refining, disposition and consumption of oil and oil products." It also alleged that the Alpha Petroleum Company, the predecessor of the de-

fendant Normandie Oil Company, acting through George Frankel, employed Oil Trading Company, Inc., as a broker "for the purpose of entering into negotiations and effecting a sale to and with the Tide Water Oil Company, a New Jersey corporation, of one or more of said defendant's oil and mineral leases in the Conroe oil field near the City of Conroe in Montgomery County, Texas; that pursuant to such employment the plaintiff did enter into such negotiations, and did interest said Tide Water Oil Company in the purchase of said oil, gas and mineral lease and certain oil wells and pipe lines and equipment used in connection with the operation and development of said lease by the defendant Alpha Petroleum Company, such lease being known as the Krohn lease, and covering 120 acres of land." It was further alleged· that these negotiations were continued and various conferences held in the City of New York, and "that plaintiff in addition to the above-mentioned conversations, conferences and negotiations, had other and additional negotiations, conferences and conversations in respect to the sale of the above-mentioned lease to the Tide Water Oil Company with another one of its Vice-Presidents, to-wit: Edward H. Salrin."

Plaintiff further alleged that "the Alpha Petroleum Company * * * directed and requested it to make and engage in other and specific negotiations looking to a consummation of said desired and contemplated sale, *and did direct it particularly to have conferences with Edward H. Salrin,* one of the Vice-Presidents of Tide Water Oil Company, and accepted plaintiff's report as to such negotiations * * *." (Italics ours.)

The petition does not separate the efforts of Oil Trading Company, Inc., in New York from its efforts in Houston, Texas. On the issue of procuring cause it was alleged: "That the services, negotiations and efforts of the plaintiff in its dealings with the Tide Water Oil Company, acting as a broker as above alleged for and on behalf of the Alpha Petroleum Company, were the efficient and procuring cause which enabled said Alpha Petroleum Company to sell the aforesaid lease to said Tide Water Oil Company."

Defendant, among other things, answered that the plaintiff, a foreign corporation, had engaged in business in Texas without a permit to do so, and, therefore, was prohibited by law from maintaining this suit.

It is not alleged by plaintiff that the negotiations conducted in New York, standing alone, constituted the procuring cause of the sale. On this phase of the case the evidence shows that Harvey D. Carter was the president and treasurer of Oil Trading Company, Inc.; that his wife owned all the stock of said Company; and that for the past sixteen years it had engaged solely in the brokerage business. In January, 1934, Carter went to Frankel's office in New York, at Frankel's request, and Frankel asked him to interest Tide Water Oil Company in buying some of Alpha Petroleum Company's leases in the Conroe oil field. Thereafter he talked several times with Noel Robinson, vice-president of Tide Water Oil Company, at his office in New York, and Robinson told him that the matter would be referred to Mr. Salrin at Tide Water Oil Company's office at Houston for recommendation. Although Salrin reported that he was interested in the Krohn lease, he made no recommendation. After some time passed, Carter decided to go to Houston, and he testified that: "One of the reasons I had come down was that I wanted to try to get a recommendation from Ed Salrin to New York on a price for the property * * *." Before seeing Mr. Salrin, Carter had a conference with the officials of the Alpha Petroleum Company in their Houston office. At that meeting the officials of the Alpha Petroleum Company set a price at which they were willing to sell, and instructed Carter to proceed to contract Salrin on that basis. Carter then interviewed Salrin in the Houston offices of the Tide Water Oil Company, and discussed the proposition with him. At the meeting Salrin again indicated his interest in the property. He said he thought the offer of defendant company was too high, and suggested a counter figure. That evening Carter had dinner with the same officials of the Alpha Petroleum Company to whom he had talked that morning, and they all discussed the proposition in detail. Carter again talked with Salrin the next morning, and told him of the discussions the night before. Salrin then told Carter that he would make a recommendation to New York; and it is undisputed that he did make such recommendation. So Carter left Houston that night and returned to New York.

Carter further testified that he had been in Texas on business for Oil Trading Company, Inc., two or three times a year for several years, and that he had come to Texas in December, 1932, to conclude a brokerage contract with Alpha Petroleum Company covering commissions for the sale of oil to Tide Water Oil Company.

It is undisputed that Oil Trading Company, Inc., had never taken out a permit to transact business in Texas. It was expressly stipulated in writing by the parties "that neither the Oil Trading Company, nor any officer thereof, has at any time filed with the Secretary of State of the State of Texas a certified copy of its Articles of incorporation, nor have they applied for, or procured, a permit to do business in the State of Texas, the plaintiff being chartered under the laws of New York."

■ The burden rests on a foreign corporation, which brings a suit in the courts of this State, to show that such foreign corporation had a permit to do business in this State, and that such permit was granted before the contract was entered into and the business alleged was transacted. Taber v. Interstate Building & Loan Assn., 91 Texas 92, 40 S. W. 954; Bigelow v. Delaware Punch Co. (Civ. App.), 37 S. W. (2d) 353; Holloway v. Memphis, El Paso & Pacific R. R. Co., 23 Texas 465, 76 Amer. Dec. 68; Elliott Electric Co. v. Clevenger (Civ. App.), 300 S. W. 91; Washington-Dean Co. v. Crow Bros. et al. (Civ. App.), 1 S. W. (2d) 914.

■ It is contended that the transaction constitutes interstate commerce. The Oil Trading Company, Inc., contended that its right to recover a commission is based not merely on the contract under which the property was listed for sale, but also on the fact that it was the "procuring cause" of the sale, and on the fact that it did certain work resulting in a sale. The subject matter of the transaction was the sale of an interest in Texas land. The only "commerce" involved was the transfer of title to an oil and gas lease, which, under the uniform Texas decisions, constitutes a determinable fee in real property. Texas Company v. Daugherty, 107 Texas 226, 176 S. W. 717, L. R. A. 1917F989; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas 160, 254 S. W. 290, 29 A. L. R. 566; Sheffield v. Hogg, 124 Texas 290, 77 S. W. (2d) 1021, 80 S. W. (2d) 741. In 12 C. J., p. 19, sec. 18, (Id. 15 C. J. S. "Commerce" sec. 17) the rule relating to subjects of commerce is stated as follows:

"Only such commodities as may lawfully become the subjects of purchase, sale, or exchange are articles of commerce which, on their movement from state to state, becomes subject of interstate commerce, within the protection of the commerce clause of the constitution."

■ It will be noted that the business of plaintiff is that of a broker; and that business, according to its pleadings, consists of "negotiations, conferences, and conversations" which it may conduct in an effort to sell properties listed with it for sale. Pursuant to the purposes of its incorporation, it did conduct such negotiations, conferences, and conversations in Houston, Texas, in an effort to get the buyer and seller together on a price so that the sale might be made.

The fact that part of the negotiations occurred in New York and part occurred in Texas would not remove this case from the provisions of the foregoing articles. Here the business to be done by the Oil Trading Company, Inc., in order to earn its commission, was the conducting of negotiations in an effort to effect a sale of the Krohn lease, which was on land situated in Texas. The evidence shows beyond dispute that if such negotiations were conducted, they were conducted in part in Texas. In other words, an indivisible and essential part of the services claimed to have been rendered by this broker, in an effort to make the sale, was performed in Texas.

■ The mere listing of the property with the plaintiff in New York is not controlling, nor is the fact that the sale was consummated in New York. Neither act, standing alone, would entitle the broker to his commission. The services rendered by plaintiff as broker were in part essentially intrastate in character. And where a nonresident corporation performs an act of a local nature, even when that act is part of a contract for the sale of goods in interstate commerce, the act is intrastate, and is subject to regulations by the State. General Ry. Signal Co. v. Commonwealth of Virginia, Ex rel. State Corp. Comm., 246 U. S. 500, 38 Sup. Ct. Rep. 360, 62 L. Ed. 854; Smythe Co. v. Ft. Worth Glass & Sand Co., 105 Texas 8, 142 S. W. 1157.

■ This Court has held that a single transaction will constitute the doing of business within the meaning of Articles 1529 and 1536, requiring foreign corporations to obtain permits before doing business in this State. Smythe Co. v. Ft. Worth Glass & Sand Co., 105 Texas 8, 142 S. W. 1157; Buhler v. Burrows Co. (Civ. App.), 171 S. W. 791; Elliott Electric Co. v. Clevenger (Civ. App.), 300 S. W. 91; Motor Supply Co. v. General Outdoor Advertising Co. (Civ. App.), 44 S. W. (2d) 507; Davis v. United Shoe Repairing Machine Co. (Civ. App.), 92 S. W.

(2d) 1107; Pate-Root-Heath Co. v. Howard Kenyon Dredging Co. (Civ. App.), 117 S. W. (2d) 547.

The construction of Article 1529 was involved in the case of Smythe Co. v. Ft. Worth Glass & Sand Co., supra, and in the opinion in that case this Court, in defining what transactions were brought within the purview of such Article, said:

"It will be observed that a desire on the part of the foreign corporation to do either of three things, to transact business, or solicit business, or establish a general or special office in this State, is required to procure a permit. The fact that the act contemplates the transaction of business in this State without the establishment here of a general or special office suggests the idea that it was as the evident intent of the Legislature to prevent a single, isolated, or any transaction of business in this State by a foreign corporation when done in pursuance of its general business as authorized by its charter."

■ When the transaction on which this cause of action is based is considered in the light of all the facts and circumstances surrounding same, it is evident that such transaction did not constitute interstate commerce,—and we so hold.

Under the pleadings and the undisputed evidence in this case, Oil Trading Company, Inc., is not entitled to maintain its suit in the courts of this State.

This record presents other questions, but, in view of the decision reached herein, they become immaterial, and we shall not discuss them.

The judgments of the trial court and of the Court of Civil Appeals will be reversed, and plaintiff's suit will be dismissed; and it is so ordered.

Opinion delivered April 8, 1942.

Rehearing overruled July 8, 1942.