In the Matter of the Construction of the Will of MARGUERITE D. HALDEMAN, Deceased.

Surrogate's Court, New York County, June 22, 1955.

*Maurice J. McCarthy, Jr.,* for Paul J. Haldeman, as executor of Marguerite D. Haldeman, deceased, petitioner.

*Lester C. Galinas,* special guardian for Anne M. Fontaine and others, infants, respondents.

COLLINS, S. The testatrix, a resident of New York, owned real property in Texas and royalty rights growing out of oil and gas leases of land located in that State. Her will, which was executed in 1951, set up her entire residuary estate in two sepa-

rate trusts, one for the benefit of her son and the other for her daughter. The son's trust fund is payable to him in installments and will terminate when he attains the age of forty-five years. If he shall die before becoming entitled to all the principal, the remainder will be distributed to his children. The daughter will become entitled to one half of the principal in installments, but the remaining portion is to be held for her life and upon her death the corpus then on hand will be divided· among her children.

The personal property of the testatrix located in this State is insignificant. When the administration of the estate is concluded, nothing will remain for the trust purposes except the land in Texas and the interests in the oil and gas leases. The " surface estate " in the land is largely unproductive. A portion has been leased for grazing purposes for $50 a year. The oil and gas leases produce a substantial return. The executor, who is the son of the testatrix, reports in his account the receipt of approximately $32,000, and the probable annual return of approximately $15,000. He asks the court to construe the will and to determine whether the income beneficiaries of the two trusts are entitled to all of the royalties, less proper expenses chargeable against them, or whether such royalties must be apportioned between principal and income.

The will does not expressly mention gas or oil leases or the income therefrom and it does not contain any explicit direction for treatment of such royalties. The executor's contention that all royalties are to be allocated to income is based upon the general direction in the will to the trustees to " receive the rents, issues, income and profits [of each trust] and after payment of all taxes, administration expenses and other lawful charges * * * to pay over or apply the net income " to the beneficiary. The executor reads this general provision against the background of the decedent's holdings and her presumed knowledge of their character and of the character of " the rents, issues, income and profits thereof." The special guardian of infant contingent remaindermen contends that under the rule applicable in this State and in the absence of any provision in the will, apportionment of the receipts is required.

There is nothing in the text of the will or in this record which would justify a finding of an intent on the part of the testatrix that all royalties were to be treated as income. Indeed, there is nothing in the will itself which would indicate any realization on her part that she was disposing of such interests in property. If we are to read such general terms as " net income " against

the background of her assets we must likewise read the term " principal " in the same way. The testatrix devoted no little attention to the disposition of principal. She made provision for its distribution in the many conceivable contingencies that might occur and she carefully provided for " invasion of principal " in the event of need arising out of an emergency " such as an operation, prolonged illness or other unusual events." She cautioned the trustees that principal should not be invaded unless the circumstances shall justify and require such invasion. If the words " net income " were intended to encompass all funds received by the trustees, there could never be any principal to invade, except the grazing lands in Texas and the property subject to the leases.

Moreover, the words " rents, issues, income and profits " follow immediately after the mandate " to invest the [funds] and keep the same invested " and were not intended to relate specifically to royalty rights or mining interests. There is lacking also in this will any of the tokens of intention which in their cumulative effect may spell out an intent to give the entire receipts to one beneficiary (see Restatement, Trusts, § 239, Comment e; *Matter of Bruen,* 83 N. Y. S. 2d 197, and *Matter of Hopkins,* 171 Misc. 910).

If this testatrix took any thought of royalties and their treatment, she has failed to reveal it in her will. Finding no indication of any actual intent on the part of the testatrix, the rule in this State is that the trustees are under a duty to administer the assets in such a way as to protect the rights and interests of both principal beneficiaries and income beneficiaries. Their duty is either to make provision for amortization of the receipts or to sell the property and invest it for the benefit of all (Restatement, Trusts, § 239; 2 Scott on Trusts, p. 1341; *Matter of Hopkins,* 171 Misc. 910, 911; *Frankel* v. *Farmers' Loan & Trust Co.,* 152 App. Div. 58, 61, affd. 209 N. Y. 553).

We have thus far dealt with the question as if it were to be determined solely by the law of this State. It is pertinent to note that oil and gas leases of property in Texas are regarded by that State as real property (*Stephens County* v. *Mid-Kansas Oil & Gas Co.,* 113 Tex. 160; 2 American Law of Property, pp. 580, 581; 7 Tex. L. Rev. 539, 554; *Matter of Piazza,* 130 N. Y. S. 2d 244, 246–247). The rule is different in New York (General Construction Law, § 39; Surrogate's Ct. Act, § 202). When two jurisdictions disagree as to the character of an interest in tangible property, its classification is determined by the law of the State where the property is located (Restatement,

Conflict of Laws, § 208; 2 Wharton on Conflict of Laws [3d ed.], p. 1298). The courts at the situs alone have power to deal effectively with the land itself and it is to that jurisdiction that appeal must ultimately be made for the enforcement of rights and interests therein (Re, Testamentary Disposition of land in the Conflict of Laws, 27 St. John's L. Rev. 36, 38). The effect to be given to a will of real property — as distinguished from mere interpretation of the language used — is determined by the law of situs of the property (2 Beale on Conflict of Laws, § 251.3; *Matter of Good,* 304 N. Y. 110, 115).

The law of Texas in respect of the apportionment of the receipts of oil and gas leases is set forth in the Trust Act (20 Vernon's Civil Statutes of Texas, art. 7425b–33). Where any part of the principal of the trust consists of an interest in land, including royalties from oil or gas leases, the royalties are to be apportioned 27½% of the gross proceeds to principal (but not to exceed 50% of the net proceeds) and the balance to income. The provisions of the statute do not apply where the trust instrument contains provisions for apportionment of the income and principal (Hardwicke, Problems Arising Out of Royalty Clauses in Oil and Gas Leases in Texas, 29 Tex. L. Rev. 790, 802).

A determination whether New York or Texas law is determinative, is of no practical consequence at this time. In both States, apportionment is required unless the creator of the trust prescribes otherwise. The Texas rule of apportionment is the same as the rule accepted in the tax field (1955 Federal Tax Regulations, § 39.23 [m]–4). In New York, there is no fixed formula. Any method reasonably adapted toward preserving the value of principal unimpaired may be used (Restatement, Trusts, § 239, Comment g). The method of apportionment applied in *Matter of Beeler* (203 Misc. 100) was, in general, the same as that set forth in the Texas Trust Act and in the Federal Tax Regulations. If the parties cannot agree among themselves upon a method for preserving unimpaired the rights of all parties, the court will determine the method of apportionment.

Proceed accordingly.