Pierson R. Hildreth, S.
This is an accounting proceeding in which the petitioner, as trustee, requests instructions as to the proper allocation of certain moneys between principal and income.
When he died in 1948, testator owned a 21.74738% interest in a tract of 1,585.49 acres of land in West Virginia in which there were deposits of coal. At that time portions of the land were, and they still are, subject to contracts of lease which provided for the removal of coal from the ground with payment for the coal removed by a royalty of so much per ton. The main value of this real property was due to the existence of the deposits of coal. Decedent’s entire interest in the tract of real property, for estate tax purposes, was appraised and fixed at $81,323.61. At the present time it appears that the major portion of the coal has been permanently severed and removed. However, some coal and the land itself remain on hand.
In a prior accounting proceeding this same petitioner, as executor, sought approval of a method of allocation between principal and income on a per annum basis of the royalties or proceeds received for the coal extracted. Such method consisted of (a) crediting each year to income out of the proceeds or royalties received in such year an amount equal to 5% of the appraised value of the tract less whatever income had been earned in that year on the amounts theretofore credited to principal, and (b) crediting the balance of such royalties to principal. Such method was approved by the court by decree dated January 30, 1953, with the provision ‘ ‘ that such method of allocation * * * be applied until the amount of royalties allocated to principal under the said leases equals the sum of $81,323.61, being the appraised value of decedent’s interest in said leases, and that the allocation of royalties, if any, received thereafter be subject to the further order of this Court.”
The present account shows that the trustee following such method has received royalties sufficient to allocate to principal the amount of $81,323.61 and has received and holds additional sums, and will receive still further sums presumably until extraction ceases. Petitioner accordingly requests instructions as to the allocation of such additional royalties received and to be received.
Decedent’s will contains no directions regarding apportionment of proceeds from the sale or other disposition of land itself or from the sale or other disposition of coal removed from land. The will does indicate that the testator was aware that some of his real estate was unproductive, as was this land in West Virginia. In paragraph “ Eighth ” thereof he directed that *392 “ all taxes assessed against any real estate held in my estate or any trust shall be chargeable against income from the estate or trust irrespective of whether or not such real estate is productive of income.”
It is indicated also, particularly from the report of the special guardian representing certain infant remaindermen at the time of the 1953 decree, that the basis for the apportionment then directed and consented to by the parties was that the proceeds so received from the disposition of the coal were to be regarded as capital with a percentage allocated to income in order to provide for equitable treatment between beneficiaries and remaindermen.
This property consists of an interest in land in West Virginia and consequently the law of West Virginia applies. (Matter of Good, 304 N. Y. 110 ; Matter of Haldeman, 208 Misc. 419.)
The Uniform Principal and Income Act has been in effect in West Virginia (W. Va. Code, § 3581 et seq.) since 1953. It appears that the mode of apportionment which has been used by the trustee under the prior decree is consistent with the provisions of that act. Sections 9, 10 and 11 thereof, among other things, provide that proceeds received from the disposition of a natural resource as consideration for permanent severance from the land are deemed principal to be invested to produce income and that out of the return from such property not in excess of 5% per annum of fair inventory value shall be deemed income. That act also provides that on disposition of unproductive real estate there be an apportionment of the proceeds when received.
While the valuation fixed for tax purposes may establish a cost basis determinative of future gain or loss depending upon whether or not the aggregate amount finally realized is more or less than the tax basis, such valuation does not limit the extent of the amount to be realized in the corpus of the trust in the situation shown in this proceeding.
It appears to the court that the method of apportionment previously approved and used is proper and should be continued. The trustee accordingly is instructed to apply the same method of apportionment as has heretofore been applied pursuant to the prior 1953 decree without regard however to the total amount heretofore or hereafter to be allocated to principal thereunder. This means of course, that if in any year the income on the investment of the amounts credited to principal from royalties equal or exceeds 5% of the original tax basis or valuation there will be no apportionment from such royalties to income for that year. On the other hand, if the amount *393 does not equal or exceed such percentage then from royalties there will be apportioned to income the amount necessary to make up the difference.
Submit decree accordingly on five days’ notice.