**Andre BACKAR**

v.

**WESTERN STATES PRODUCING COMPANY and Wayman W. Buchanan.**

**No. SA–72–CA–134.**

United States District Court,
W. D. Texas.

June 14, 1974.

Order July 8, 1974.

Edward Kliewer, Jr., Dallas, Tex., Ralph Langley, San Antonio, Tex., for plaintiff.

Akin, Gump, Strauss, Hauer & Feld by Michael Lowenberg, Dallas, Tex., Cox, Smith, Smith, Hale & Guenther by Paul H. Smith, San Antonio, Tex., for defendants.

## PARTIAL SUMMARY JUDGMENT

SUTTLE, District Judge.

This breach of contract action is before the Court on cross motions for summary judgment. The facts related to

liability are not in dispute. On January 29, 1971, defendants mailed the following letter from San Antonio, Texas to plaintiff in New York, New York:

Dear Andre:

In consideration of your obtaining investors (whether persons, corporations, or organizations) for drilling funds managed by Western States Producing Company, or any other companies with which I am associated, each of the undersigned agrees that if any such investors, directly or indirectly obtained by you, ever participates in any drilling venture managed or controlled by Western States Producing Company or Wayman W. Buchanan, you will be paid your customary five percent (5%) commission for such monies invested.

Yours very truly,

WESTERN STATES PRODUCING COMPANY

By /s/ Wayman W. Buchanan, President

Wayman W. Buchanan, President

/s/ Wayman W. Buchanan

Wayman W. Buchanan
(Individually)

---

Defendant, Wayman W. Buchanan, then made several trips to New York City, where plaintiff introduced him to potential investors. After a luncheon arranged by Backar, Buchanan wrote the following memorandum acknowledging that plaintiff Backar had fully performed under the contract:

TO WHOM IT MAY CONCERN:

This is to certify that I had lunch today with Andre Backar at the Marco Polo Club. He introduced me to Mr. Martin Fribush of Comprehensive Resources Corp. for the aim of doing business with him.

As per our letter of January 29, 1971, Mr. Backar is entitled to a finders fee.

/s/ Wayman W. Buchanan
President
Western States Producing Co.

---

Subsequently, large investments with Western States were made by Comprehensive Resources Corp. The investments, although complex, essentially involve the purchase of oil leases and the drilling of oil wells primarily in Texas. By pleading these undisputed facts, plaintiff has established a prima facie case entitling him to relief as a matter of law.[1] In an attempt to escape liability, however, defendants urge that the cause of action is barred under the laws of Texas and New York. Since the affirmative defenses are categorized by state, the threshold issue becomes, which state's law is to be applied? Because this is a diversity suit, brought in the Western District of Texas, Texas con-

1. See text accompanying notes 3–5 *infra.*

flicts principles are dispositive of the choice of law issue.[2]

■■ The Fifth Circuit has recently reviewed Texas conflicts law and noted that:

> In Texas, the law of the place where the contract is made generally governs. When a contract is made in one state to be performed in another, the place of performance governs. And where a contract is to be performed in more than one place, the place of making governs unless the parties intended otherwise.[3]

Plaintiff urges that Texas courts would apply New York law; the Court agrees. The January 29th letter was an offer to enter into a unilateral contract because, in return for a promise, it called for the performance of an act.[4] The place where the requested act was done is the place of the contract.[5] The contract was, therefore, made in New York when Backar performed the requested act by introducing Buchanan to Fribush, an investor. This conclusion is supported by the February 16th memorandum and Buchanan's admission that after plaintiff introduced him to Fribush, Backar had nothing further to do to earn his commission.[6] New York is, therefore, the place of the contract and its law controls this litigation.

■ Defendants assert that the action is barred by New York's Real Property Law and by the New York Statute of Frauds.[7] Section 442–d of the New York Real Property, McKinney's Consol. Laws, c. 52, law is a substantive enactment of the place of the contract[8] and, therefore, it must be applied by the forum.[9] The statute provides that:

> No person, copartnership or corporation shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose.

Plaintiff, who is not a licensed real estate broker, argues that section 442–d only bars actions brought "in [a] court of [New York] state . . . ." and the statute therefore cannot bar an action brought in a federal court sitting in Texas. The logical extension of this untenable argument is that a federal court sitting in the Southern District of New York could not apply the statute because it is not a "court of [New York] state". The Second Circuit has by implication rejected this position,[10] which if applied would result in diametrical outcomes depending upon whether an action is brought in state or federal court. That result would be violative of both the letter and the spirit of Erie R.R. v. Tompkins[11] and its progeny. Moreover, since New York is proud that it affords "foreign principals the greatest degree of protection against the unfounded

2. Klaxton Company v. Stentor Electric Manufacturing Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

3. Ramirez v. Autobuses Blancos Flecha Roja, S.A. De C.V., 486 F.2d 493, 496 (5th Cir. 1973) (citations omitted) ; accord, Product Promotions, Inc. v. Cousteau, 495 F.2d 483 (5th Cir. 1974).

4. S. Williston, Contracts § 97 (3rd ed. 1957).

5. Id.; Texas Employers Ins. Ass'n v. Moore, 56 S.W.2d 652, 655 (Civ.App.Tex.1932).

6. Deposition of Wayman Buchanan at 41.

7. Defendants also assert that the cause of action is barred because plaintiff violated the Rules of the New York Stock Exchange and because plaintiff is not the real party in interest. These contentions are without merit.

8. Meltzer v. Crescent Leaseholds Ltd., 442 F.2d 293, 295 (2d Cir. 1971).

9. California v. Copus, 158 Tex. 196, 309 S.W. 2d 227, 229 (1958).

10. Meltzer v. Crescent Leaseholds Ltd., 442 F.2d 293 (2d Cir. 1971).

11. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

claims of brokers and finders," [12] it is paradoxical to argue that the intention of the New York legislature was to draft a statute that could be evaded simply by filing suit in a neighboring state or in federal court.

■ The issue, then, is whether the statute contemplates plaintiff's activities. Plaintiff is a finder, who introduced defendant to a potential investor to negotiate oil investments. An unlicensed finder,[13] who introduces [14] businessmen to negotiate real property investments,[15] is barred by section 442–d from maintaining a cause of action for commission even though the property interests are not located in the State of New York.[16] Since plaintiff is not a licensed real estate broker, the action is barred if interests in oil leases and drilling ventures are considered realty. If, on the other hand, oil and gas interests are considered personalty, then the section 442–d attack will be wide of the mark and not effect this action.

■ The Court's attention, therefore, is focused on the question of whether the characterization should be made pursuant to the law of Texas or the law of New York. Defendants argue that Texas law controls because real property issues are governed by the law of the situs.[17] In making that argument, defendants have adroitly side stepped the real issue, which is whether oil and gas leases are to be treated as realty. By assuming the ultimate issue and then offering that assumption as a premise to support the urged conclusion, defendants have pulled themselves up by their bootstraps.

The Restatement (Second) of Conflict of Laws provides a more rational approach to the characterization problem; it states that:

> When the same legal term or concept appears in the local law of two states . . . and different meanings are given in these states to the term or concept, the meaning to be applied is that which prevails in the state whose local law governs the issue under the applicable choice of law rule.[18]

Since the Court has ruled that New York is "the state whose local law governs under the [Texas] choice of law rule," the Restatement (Second) approach requires application of the New York law. Moreover, as this result would be reached under pre-Restatement (Second) Texas case law,[19] the Court

---

12. Intercontinental Planning Ltd. v. Daystrom, 24 N.Y.2d 372, 384, 300 N.Y.S.2d 817, 827, 248 N.E.2d 576, 583 (1969).

13. Sorice v. Dubois, 25 A.D.2d 521, 267 N.Y. S.2d 227 (1966) ; cf., Minichiello v. Royal Business Funds Corp., 18 N.Y.2d 521, 277 N.Y.S.2d 268, 223 N.E.2d 793, 796 (Ct.App. N.Y.1966).

14. Baird v. Krancer, 138 Misc. 360, 246 N. Y.S. 85 (1930) ; see, Salzano v. Pellillo, 4 A.D.2d 789, 165 N.Y.S.2d 550 (1957).

15. E. g., J. L. Kislak Inc. v. Carol Management Corp., 7 A.D.2d 428, 184 N.Y.S.2d 315 (1959) ; Sockel v. Degal Yehudo Cemetery Corp. of New Jersey, 268 A.D. 207, 49 N.Y. S.2d 176 (1944).

16. Meltzer v. Crescent Leaseholds, Ltd., 442 F.2d 293 (2d Cir. 1971), aff'g, 315 F.Supp. 142 (S.D.N.Y.1970).

17. Citing, 8 N.Y.Jur Conflicts §§ 9, 13, 16; 33 N.Y.Jur Landlord & Tenant § 5, Defendants also contend that both the choice of law and the characterization issues are con-

trolled by the contracts that Western States made with Comprehensive Resources. This contention has no merit. Plaintiff only contracted to bring investors to Western States; he was not interested in the substance of their agreement. Plaintiff's contractual rights vested when he performed; defendants cannot thereafter defeat his rights unilaterally by entering into a contract with a third party. The Court refuses to make the legal gyrations necessary to invalidate the contract, which was valid when and where made. See, Ehrenzweig, Contracts in the Conflict of Laws—Part One: Validity, 59 Colum.L.Rev. 973 (1959) ; Stumberg, Conflict of Laws—Validity of Contracts—Texas Cases, 10 Tex.L.Rev. 163 (1932).

18. Restatement (Second) of Conflict of Laws § 7, comment (c) at 18 (1971).

19. In Normandie Oil Corp. v. Oil Trading Co., 147 S.W.2d 557 (Ct.Civ.App.Tex.1940), rev'd on other grounds, 139 Tex. 402, 163 S.W.2d 179 (1942), the Texas Court of Civil

holds that the characterization must be made pursuant to the internal law of New York.

The law of New York is clear. Section 39 of the New York General Construction Law, McKinney's Consol.Laws, c. 27, provides that:

Oil wells and all fixtures connected therewith, situate on lands leased for oil purposes and oil interests, and rights held under and by virtue of any lease or contract or other right or license to operate for or produce petroleum oil, shall *be deemed personal property* . . . . (emphasis added).

Defendants urge, however, that even though interests in oil and gas leases are considered personalty pursuant to section 39, that statute does not affect the "nature of the underlying property which is the subject of the lease . . . and land is still considered to be real property."[20] Defendants' position, which is rejected by New York and Texas statutory constructions,[21] again begs the question. Defendants are again assuming that oil and gas leases are land; the statute, however, is explicitly to the contra.

■■ Arguing alternatively, defendants urge that the New York Statute of Frauds[22] bars the action. It is their contention that "unless the transaction meets each and every term of the written contract, recovery" must be barred. This proposition is incorrect.[23] The Statute of Frauds, which was designed to guard against fraudulent claims supported by perjured testimony, was never meant to be used as a means of evading just obligations based on contracts fairly and admittedly made.[24] Thus, the Statute cannot properly be applied to bar this action, which is based upon writings that "identif[y] the parties . . . the subject matter of the contract and establishes that plaintiff in fact performed."[25]

Since none of the affirmative defenses is valid, the Court finds, on the undisputed facts, that plaintiff must prevail on the issue of liability. Accordingly the amount of damages is the only issue left to be decided. The facts related to damages, however, are genuinely in dispute and, therefore, the entire cause is not ripe for summary judgment.

Accordingly, a partial summary judgment, limited to the issue of liability, is entered for plaintiff.[26] The amount of

---

Appeals noted that under New York law "an oil lease, whether in Texas or elsewhere, [is] simply treated . . . as personal property. . . ." *Id.* at 561.

20. Defendants' supplemental brief at 4.

21. *Compare* Wagner v. Mallory, 169 N.Y. 501, 62 N.E. 584 (1902) *with* Normandie Oil Corp. v. Oil Trading Co., 147 S.W.2d 557 (Civ.App.Tex.1940), rev'd *on other grounds*, 139 Tex. 402, 163 S.W.2d 179 (1942).

22. New York General Obligations Law § 5–701(10), McKinney's Consol.Laws, c. 24–A. Tangential to defendants' Statute of Frauds argument, is their contention that no commission is due under the express terms of the contract. This contention, which raises a mixed question of law and fact, will be considered in determining the issue of damages.

23. Defendants' reliance on Intercontinental Planning Ltd. v. Daystrom, Inc., 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969) is misplaced. In *Daystrom*, Compa-

ny A signed an agreement entitling plaintiff to a finders fee if Company A acquired Company B. The acquisition, however, was never accomplished; instead Company C acquired both Company A and Company B. The writing, which referred only to the unconsummated transaction, was held insufficient to save plaintiff's cause of action for a finders fee. The import of *Daystrom* is that a writing that clearly relates to one business venture cannot be used to support a cause of action based upon a totally different venture. A fortiori, *Daystrom* does not support the expansive proposition that the New York Statute of Frauds bars actions when the writing is not a mirror image of the final transaction.

24. Morris Cohon & Co. v. Russel, 23 N.Y.2d 569, 297 N.Y.S.2d 947, 245 N.E.2d 712, 715 (1969), citing, 4 S. Williston, Contracts § 567A at 19–20 (3rd ed.).

25. *Id.*

26. Fed.R.Civ.P. 56(c), (d).

damages will be determined after a trial on the merits.

## ORDER DENYING DEFENDANTS' MOTION TO RECONSIDER THE PARTIAL SUMMARY JUDGMENT

The Court has been urged by defendants to reconsider the partial summary judgment filed in this cause. Specifically, defendants take exception to the holding that the characterization of oil and gas interests must be made pursuant to the internal law of New York.

Defendants argue that In re Piazza's Estate [1] and In re Haldeman's Estate [2] stand for the proposition the characterization of property is determined by the law of the state where the property is located. The proposition stated in the New York Surrogate's Court [3] decisions (cited above) is no longer valid. In both decisions, the trial court expressly relied on section 208 of the First Restatement of Conflict of Laws,[4] which states that

> Whether an interest in a tangible thing is classified as real or personal property is determined by the law of the state where the thing is.

Since New York courts now rely on the Second Restatement of Conflict of Laws instead of the First, In re Piazza's Estate [5] and In re Haldeman's Estate [6] have no precedential value.

Section 222 of the Restatement (Second) of Conflict of Laws corresponds with section 208 in the First Restatement. Comment *g* of section 222 cross references to section 7 and comment *c* of that section announces the modern characterization rule, which is:

> When the same legal term or concept appears in the local law of two states which are involved in a problem, and different meanings are given in these states to the term or concept, the meaning to be applied is that which prevails in the state whose local law governs the issue under the applicable choice-of-law rule . . . .

Relying on the language quoted above, this Court held that the internal law of New York controls the characterization issue and entered the partial summary judgment. Before reaching that result, the Court considered In re Piazza's Estate [7] and In re Haldeman's Estate,[8] but rejected them in favor of the approach suggested by the Restatement (Second) of Conflict of Laws. The Court did not discuss the cases because they merely indicate what the law in New York was twenty years ago. Since the Court had already considered the arguments made in this motion, and no new arguments have been presented, the Court will not reconsider the partial summary judgment ruling.

1. 130 N.Y.S.2d 244 (Sur.Ct.1954)

2. 208 Misc. 419, 143 N.Y.S.2d 396 (Sur.Ct. 1955)

3. The jurisdiction of the New York Surrogate's Court is limited to matters relating to affairs of decedents. N.Y.Const., art. VI, § 12.

4. *Compare* In re Piazza's Estate, 130 N.Y.S. 2d 244, 247 (Sur.Ct.1954) *with* In re Haldeman's Estate, 208 Misc. 419, 142 N.Y.S.2d 396, 399 (Sur.Ct.1955).

5. *Id.*

6. *Id.*

7. *Id.*

8. *Id.*